# CHARLESTON.

STATE v. HENRY WRISTON.

Submitted March 28, 1923.  Decided April 17, 1923.

1. CRIMINAL LAW—HOMICIDE—*Dying Declaration Prima Facie Case for Admission of.*

Where, on a trial for homicide, it is shown that the deceased, a boy fourteen years of age, was suffering from a gun-shot wound through his side, spine and lungs, which was inflicted two days before he made a dying declaration; that his body below the wound was paralyzed; that he was coughing and spitting blood as a result of the wound; that. after a severe spell of coughing, he said, "My God, I am going to die," and upon being asked if he realized he was going to die, he replied "yes"; that he was then asked to relate how the shooting occurred, and after a number of efforts, interrupted by spells of coughing, he related the details of the shooting; that his statement was reduced to writing, and upon its being read to him he had certain corrections made in it, but because of physical weakness was unable to sign it; that as a result of the wound he died within six hours thereafter; a prima facie case is made for the admission of his statement, as a dying declaration, it appearing that he was fully conscious and believed that death was near. (p. 571).

2. CRIMINAL LAW—HOMICIDE—*Evidence.*

On a trial for murder a witness for the accused is permitted to testify fully and in detail how deceased was shot, clearly negativing the charge that he was shot by the accused, and then witness is asked: "It has been testified here that Henry Wriston (the defendant) took his gun and aimed it at Emmel Williams (the deceased) and fired the shot. Did he do that?" To which, witness answered "No, sir," an on motion of the state the answer was struck from the record. The action of the court in striking out the answer was not prejudicial error. (p. 572).

3. CRIMINAL LAW—INSTRUCTIONS—*Not Error to Refuse Instructions Which are Mere Repetitions of Instruction Given Which Fully Covers Law Applicable to Facts in Evidence.*

Where the court gives an instruction fully covering the law applicable to the facts shown in evidence, it is not error to refuse other instructions which are mere repetitions of the instruction given. (p. 573).

Error to Circuit Court, Raleigh County.

Action by the State of West Virginia against Henry Wriston, who was indicted for murder, but found guilty of voluntary manslaughter, and seeks reversal of said judgment.

*Affirmed.*

*A. P. Farley, C. M. Ward* and *H. A. Dunn,* for defendant in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, *A. A. Lilly, T. J. McGinnis* and *Ben H. Ashworth,* for the State.

MEREDITH, JUDGE:

Defendant was indicted for the murder of Emmel Williams, a fourteen year old boy, was found guilty of voluntary manslaughter and sentenced to four years confinement in the penitentiary. He seeks reversal of the judgment, upon three grounds: (1) the admission of certain evidence on behalf of the state; (2) the rejection of certain evidence offered on behalf of defendant; and (3) the refusal of certain instructions offered by defendant.

There is no contention that there is not sufficient evidence to support the verdict. There is ample for that purpose and it was for the jury to give it such weight as they deemed it entitled to; so we need state only such details of the occurrence as may be necessary to make clear the question raised.

There was ill-feeling between the Williamses on the one hand and the Stovers and Wristons on the other. They live on White Oak Creek in Raleigh County. The three Stover families mentioned in the record live farthest up the creek; below them about a quarter of a mile lives Linus Williams, father of Emmel Williams, the deceased; below but in sight of the Williams residence, lives the defendant with his mother; and about half a mile farther down the creek lives "Aunt" Rebecca Wriston. It was at or near "Aunt Rebecca's" house that the shooting occurred. Ira Wriston, a brother of defendant, married a daughter of Linus Wil-

liams. On Sunday, January 2, 1921, about 3 o'clock in the afternoon, Willie Williams, Hobert Williams, Elka Williams, Arlen Williams, Henry Williams, and Emmel Willams were going down the White Oak Creek road in an automobile; a short distance below Aunt Rebecca Wriston's house they met Garner and Arthur Stover, who were walking up the road. After the Stovers had gone by a few feet, Willie Williams requested Arlen Williams, the driver, to stop, as he wanted to make friends with the Stover boys. Willie and Elka Williams got out of the car, went back to the Stovers and engaged in conversation, meantime walking nearer Rebecca Wriston's house. This conversation, as detailed, was not all friendly. While they were standing near an entrance leading to Rebecca Wriston's house, Clyde and Brenny Stover came riding up, dismounted and after hitching their mules, joined the crowd. Very soon the other Williams boys joined them. The state contended that while these parties were there shaking hands and making friends, the defendant and his brother Ira came running down the road, armed with guns, using vile language, making threats and calling on Clyde Stover to kill Arlen Williams, and the fight began; Clyde hit Arlen twice, and thereupon Emmel Williams struck Clyde Stover with a rock; whereupon, the defendant, with an oath, took deliberate aim and shot Emmel Williams; that from there on both sides continued firing for some time; Willie Williams ran into Aunt Rebecca's house, over her protest, as she says, and fired a number of times out the door-way at the Wristons and Stovers. The defendant claims that he did not shoot the boy; that the shot that killed him was fired by Willie Williams from the house. Defendant's gun was a rifle, and Willie Williams' was a revolver. The ball was not located and there was nothing about the wound from which, with any certainty, the kind of gun that did the killing could be determined. It appears pretty clearly that there was an altercation and probably some fighting going on before the two Wristons arrived on the scene. Londa Maynor, who was at Aunt Rebecca Wriston's at the time, becoming excited, ran up the road to Henry Wriston's house and told Henry and Ira that the Williams' were down there on Clyde Stover.

This is undisputed and it is quite likely that the Wristons came down to protect Clyde, as they testified. They state that after Willie Williams had fired from the house three or four times a ball from his pistol hit the stock of defendant's gun, causing it to discharge and shoot into the ground in front of defendant; that this was the only time that defendant's gun was discharged in the fight at that place, but that one of the shots from Willie Williams' gun killed Emmel Williams, but if the shot from defendant's gun did kill him it was not defendant's fault. The boy was brought to a hospital in Charleston where he died about 3 o'clock on the morning of January 5th. That he died from a gunshot wound is clear. The assignments of error will be considered in their order.

1. Defendant contends that the dying declaration of Emmel Williams was improperly admitted in evidence. He was shot on the afternoon of January 2nd, taken to his home that evening, remained there until about noon of January 4th, then removed to a Charleston hospital. He died about 3 o'clock the next morning. Dr. G. C. Schoolfield, who had charge of him after he entered the hospital, testified that the shot entered the spine from the left side, passed through the spinal cord and pleurae, making a small opening at entrance and a larger opening at exit. It completely paralyzed the body below the injury. The doctor deemed an operation useless and testified that the boy was in no condition to handle and he assumed the injury was fatal. About six hours before his death the declaration was taken in short-hand by Hallie Enochs, written out in long-hand, some corrections at Emmel's instance were made, but he was too weak to sign it. It was admitted as part of her testimony. No foundation for its admission was laid on her examination, but there was in the testimony of Attorney Dunbar who preceded her on the stand. He was present when the declaration was made. From his testimony it is clear that the boy realized that death was imminent, and he was fully conscious. He was shot through the side, spine and lungs; was coughing and spitting blood: Just after one of his severe coughing spells, he said "My God, I am going to die"; he was then asked by At-

torney Dunbar if he realized that he was going to die, and he replied "Yes." He was then asked to tell about the shooting, whereupon the declaration complained of was made, though frequently interrupted by coughing, which compelled him to repeat parts of it three times. He told how defendant shot him. We think this comes completely within the principles laid down in the case of *State* v. *Clark,* 64 W. Va. 625, 63 S. E. 402, and *State* v. *Sauls,* decided this present term, and the declaration was properly admitted.

2. The second assignment relates to the rejection of certain evidence offered by defendant. Viola Maynor at the time of the shooting was at Aunt Rebecca Wriston's house and testified for the defendant. She was asked, "It has been stated here that Henry Wriston took his gun and aimed it at Emmel Williams and fired the shot. Did he do that?" Witness answered "No, sir," but for some reason, probably because of its form, the answer was struck out on motion of the state, and this is relied on as error. The question could have been put in better form; but when we read the rest of her testimony we find that from her details of the shooting Henry Wriston did not shoot the boy; that but one shot was fired from Henry's gun, and then Emmel was below and behind Henry, Henry at the time facing the house. She illustrated to the jury the manner in which Henry held his gun, and told of the fight in detail. We think the defendant was not prejudiced by the exclusion of her answer.

Ira Wriston, a brother of defendant, testified in his behalf and gave in detail his version of the occurrence. The following questions and answers appear in the record of his testimony: Q. "Did Henry Wriston shoot Emmel Williams? A. No, sir. Q. It has been stated here that he took aim and shot Emmel Williams with the gun. Did he do that on that occasion? A. He did not. No, sir." On motion of the state the last answer was struck out. This is assigned as error. The question should have been better framed, though we think counsel for the state should not have been so captious about it. However, defendant had the full benefit of witness's testimony to the effect that defendant did not shoot Emmel, and for this reason the exclusion of this answer

was not such error as would warrant us in reversing the case. The jury did not believe that defendant took aim and deliberately shot Emmel Williams. Their verdict shows that. Had he done so, as testified by a number of witnesses for the state, they would have found him guilty of first degree murder. While the answers to these particular questions were struck out, his witnesses were given full opportunity to give details of the shooting, which they did, and their testimony was all favorable to the accused, and had they been believed the jury must have acquittel him.

Ira Wriston further testified: ''Q. Tell the jury why you went down there that day. A. I went down there to protect Clyde. Q. Well, did you take a gun with you? A. Yes sir. Q. Why did you take a gun with you? A. I *taken* it down there to protect Clyde Stover. Q. What made you think at that time that it was necessary to take that gun for the protection of Clyde Stover,—tell the jury why?'' To this last question objection was made and sustained, but there was no avowal on the record of what the witness would have answered. Of course, we can not say under the circumstances that this was error. Defendant testified that he went down the road, taking his gun with him, and on being asked why he went down the road, answered: ''Londa Maynor came running up there and told me the Williams boys were all down there on Clyde Stover, and I went down there. Q. Well, did you have this gun with you? A. Yes sir, I took that gun and went down to protect Clyde. I had been told they were all drinking that day when they went down in the car.'' On motion of the state, his statement as to what he had been told was struck out. Clearly this was not error.

The defense in this case was that defendant did not shoot Emmel Williams; that Willie Williams fired the fatal shot and there is considerable evidence to that effect, so much in fact, that had Willie Williams been on trial for this homicide and been found guilty by the jury we could not disturb the verdict. But the jury found the defendant guilty on conflicting testimony and the verdict is controlling. We do not find any substantial error in the admission or rejection of the evidence as above detailed.

3. There were fifteen instructions given on behalf of de-

fendant and two rejected. Those rejected, Nos. 14 and 17, were substantially covered by No. 16. The instructions given for the state and for the defendant fairly presented the law applicable to the facts in the case, and we find no error in that regard. · .

. The record in this case for some unaccountable reason has been poorly arranged, there being printed with the record about 250 pages of evidence from another case that does not belong in it; the instructions and formal bills of exception were omitted, but were later supplied in typewritten form. This slipshod arrangement has added much labor on the part of the court, but we have carefully considered every question raised, and are of opinion that there is no error. We therefore affirm the judgment.

*Affirmed.* ·