# CHARLESTON.

## STATE v. JOHN ZINK.

### (No. 5105.)

Submitted February 24, 1925.	Decided March 3, 1925.

1. INTOXICATING LIQUORS—*Burden of Proving That Certain Liquor Found in Possession of Person is Not Moonshine is Upon Person in Whose Possession it is Found.*

   Under Section 37, Chapter 32-A, Code, the provision that the finding of any quantity of intoxicating liquor in the possession of any person other than commercial whiskies which were obtained and stored in homes for domestic use at a time when it was lawful so to do, shall be *prima facie* evidence that the same is "moonshine liquor," casts the burden of proving the contrary upon the person in whose possession said liquor is found. (p. 343).

   (Intoxicating Liquor, 33 C. J. §483.)

2. CRIMINAL LAW—*Refusal of Instruction Similar in Substance to Other Instructions Fully Covering Law Applicable to Facts Not Error.*

Where the Court gives instructions fully covering the law applicable to the facts shown in evidence, it is not error to refuse other instructions which are similar in substance to the ones given. (p. 345). . .

(Criminal Law, 16 C. J., § 2506.)

3. SAME—*Verdict of Guilty, Consistent With Only Reasonable Interpretation Possible Upon Evidence and Circumstances Proven, Will Not be Set Aside on Appeal.*

A verdict of guilty, returned by a jury in a criminal case, consistent with the only reasonable interpretation which can be placed upon the evidence and circumstances proven, will not be set aside by this Court. (p. 345).

(Criminal Law, 17 C. J. §3593.)

4. SAME—*Refusing Instruction as Whole Embodied in Another Giving Definition of Reasonable Doubt, Not Reversible Error.*

While the Court, on request, should give an instruction calling attention to the necessity of the unanimity of the jury verdict, in a case where such instruction is embodied in another giving a wholly different definition of "reasonable doubt," not of common judicial acceptation, from said term as defined in another instruction, of common judicial acceptation, it is not error for which the case will be reversed to refuse such instruction as a whole. (p. 343).

(Criminal Law 16 C. J. §§2462, 2507.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marshall County.

John Zink was convicted of possession of moonshine liquor, and he brings error.

*Affirmed.*

*Everett F. Moore and Martin Brown,* for plaintiff in error.
*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

WOODS, JUDGE:

The defendant, John Zink, prosecutes this writ of error to a judgment of the Circuit Court of Marshall County en-

tered on the 25th day of September, 1923, sentencing him to confinement in jail for sixty days and to the payment of $100.00 fine and costs. The indictment charges him with having had in his possession a quantity of "moonshine" liquor, upon which charge a jury found him guilty.

F. M. Howard, deputy sheriff of Marshall County, H. G. Smith and U. S. Crawford of the State Police, and A. R. McMurry of the Moundsville police force, under authority of an arrest, search and seizure warrant issued by a justice of the peace, set out on the 15th day of November, 1922, to search for intoxicating liquors in "that certain two story frame house known as No. 1113 Lafayette Avenue, in the city of Moundsville," and to apprehend and arrest one John Zink. The search was made, certain liquors found under the floor of the Zink home were seized, and John Zink arrested. He was later indicted at the January, 1923, term of the Marshall county circuit court, as above stated. At the trial the testimony of the State was in substance as follows: The four officers mentioned above went to the house aforesaid. This house was a double house, John Zink and family living in the northern half thereof. Howard and McMurry went to the rear of the house to explore. Howard crawled through a small opening up under Zink's kitchen, but found no access up under that portion of the floor of Zink's residence where the "moonshine" was later discovered. Howard and McMurry then went around to the upper side of the house, and they, together with the state police, noticed a small opening in the foundation wall on the upper side right "fornenth" the chimney where a couple of bricks were out. On looking through this opening they saw under the floor about half of a can of something supposed to be beets or cherries. They then looked in through the window of the central room of the Zink home and located a position on the floor over the supposed fruit. Howard sent for a pick. All four of the officers went inside, and with a little effort by use of the pick they opened a trap door next to the hearth and wall, and under the floor, to use the language of the officer, "there set eight gallons of moonshine." The return on the warrant shows that they found "8 gallons 'Moonshine'

liquor, five empty one gallon glass jugs, one empty one gallon tin jug, five empty one gallon tin cans, one lot empty containers of various sorts.'' Five gallon of the ''moonshine'' was in the tin container, which was exhibited in evidence at the trial, and inspected by the jury, and the other three gallons were in three separate one gallon glass jugs. The witnesses for the State testified that it was moonshine liquor. Mrs. John Zink and daughter, Della, testified on behalf of the defendant that they had lived in that same house for three years; that they never knew of the · trap door; and that they knew nothing of the liquor being stored there. The defendant did not go on the stand.

The first point of error is that the Court erred in giving, on its own motion, an instruction defining ''moonshine'' liquor. This instruction is identical with one approved in *State* v. *Walker*, 94 W. Va., at page 696. The instruction in the latter case, however, went farther than the Court in the instant case, in this that it held that the burden of proving that intoxicating liquors, other than commercial whiskies which were obtained and stored in homes for domestic use, found in possession of any person, is not ''moonshine'' liquor, is upon the defendant. But the Court in the present case at the conclusion of the instruction added another clause defining intoxicating liquors according to section 1, of chapter 32-A, Barnes' Code. While this was not warranted, the fact that no proof was offered by defendant to the effect that the liquor found in the Zink home was not ''moonshine'' makes it harmless error, if error it be. However, if this latter clause be read in the light of the rule of evidence as to what is ''moonshine'' liquor, as defined in section 37, of the same chapter, and as embodied in the first clause of the Court's instruction, and subject to the qualification therein, it would not be open to criticism. The able counsel in their brief, make the point that the instruction under consideration was not submitted to counsel for their examination before it was given. This is under authority of *State* v. *Noble*, 96 W. Va. 432, 123 S. E. 237; and *State* v. *Warrick*, 96 W. Va. 722, 123 S. E. 799. The record fails to show affirmatively that such instruction was not so presented to counsel for

consideration.   In view of the silence of the record as to the
performance of duties incumbent upon the court in the trial of
criminal as well as civil cases, due performance thereof is pre-
sumed.  *State* v. *Beatty,* 51 W. Va. 232; *State* v. *Lavin,* 64 W.
Va. 26.   It appears, however, from the record, that the in-
struction given by the Court in this case was prompted by a
controversy between counsel in the argument of the case over
the meaning of the term "moonshine" liquor, and the Judge
informed counsel from the bench that at the conclusion thereof
he would give to the jury the instruction.   This amounted to
nothing more than a ruling on the point already requested by
the defendant's counsel, and will be so considered by this
Court.

Another ground of error urged is the refusal of an instruc-
tion combining a definition of "reasonable doubt" with the
provision that if any juror in the case has such doubt, after
hearing the evidence, receiving instructions of the court,
and listening to arguments of counsel, he should not agree to
a conviction.   Instruction No. 4, for the defendant, defining
"reasonable doubt" had already been given to the jury.   To
have given the instruction, the refusal of which is complained
of here, would have been to give a wholly different definition
of reasonable doubt, and not of common acceptation, coupled
with the direction that if any single juror was opposed by
such a doubt as defined therein that it was his duty to stand
for acquittal.   Instructions attempting to define reasonable
doubt are generally condemned by text writers on evidence.
4 Wigmore on Ev., Sec. 2497; Chamberlayne on Mod. Ev.,
Sec. 996-b and 1016.   Any attempted definition of the term
of such common use and self evident meaning as "reasonable
doubt" is more apt to confuse rather than to enlighten
a jury.   *State* v. *Worley,* 82 W. Va. 350; *State* v. *Snider,*
81 W. Va. 522.   Judge LIVELY aptly puts it in the following
words in *State* v. *Powers,* 91 W. Va. 752: "Usually such in-
structions do not add to nor detract from the common in-
terpretation of the phrase.   The ordinary juror is capable of
determining the meaning of the phrase 'reasonable doubt'
without interpretation."   The court held in the latter case
that instructions attempting to define "reasonable doubt"

should be discouraged. Had the instruction of the unanimity of the verdict been requested alone, it would have doubtless been given to the jury by the court, and it would have been error to have refused it. *State* v. *McKinney,* 88 W. Va. 401. The instruction on this point approved in the last mentioned case is preferable in form to the one asked in the instant case. To have given it in the setting requested would have been to confuse the jury by the multiple definitions of the term ''reasonable doubt.'' It was not error to refuse to give it for this reason.

The last assignment of error is to the court's refusal to give defendant's instruction No. 13 in which the jury is told that it must appear beyond a reasonable doubt that the defendant and not some one else committed the offense charged in the indictment. This is substantially given to the jury instruction No. 11 which told the jury that if they entertained a reasonable doubt as to whether the defendant was identified from the evidence as the person who committed the offense charged, they must acquit the defendant. Where the court gives instructions fully covering the law applicable to the facts shown in evidence, it is not error to refuse other instructions which are mere repetitions of those given. *State* v. *Wriston,* 93 W. Va. 568; *Kerr* v. *Lunsford,* 31 W. Va. 659.

The court gave twelve instructions on behalf of the defendant. These instructions together with the two given for the state fairly presented the law applicable to the facts in the case.

The evidence plainly justifies the verdict. There is no reversible error in the record. Let the judgment be affirmed.

*Affirmed.*