# CHARLESTON.

## STATE v. HENRY KEES.

·Submitted October 31, 1922.      Decided November ·14, 1922.

1. SEARCHES AND SEIZURES—*Constitutional Provision Against Unreasonable Searches and Seizures Declaratory of the Common Law.*

   The provisions of the Constitution that the rights of the citizens to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and that no warrant shall issue except upon probable cause, supported by oath or affirmation particularly describing the place to be searched, or the person or thing to be seized, was adopted for the purpose of guaranteeing to the citizens the rights and immunities then enjoyed under the common law. (p. 279).

2. SAME—*Legislature Can Declare What Shall Constitute Probable Cause.*

   Under such constitutional provision it is competent for the legislature to declare that a certain showing shall constitute probable cause for the issuance of a search warrant, provided the complaint thus prescribed does not require less to be shown than was required for the issuance of such a warrant at common law. (p. 279).

3. CRIMINAL LAW—*Search Warrant Issued on Statutory Complaint Admissible in Trial of One Whose Premises Searched.*

   A search warrant issued upon a complaint in the form prescribed by § 9 of ch. 32a of the Code is a valid warrant, and evidence procured by a search made thereunder is proper to be introduced upon the trial of one whose premises were searched for an offense thereby shown. (p. 279).

4. INTOXICATING LIQUORS—*Fact That Search Warrant Issued on Information Conveyed to Complainant Held Not to Invalidate it.*

   The fact that the complainant in the information upon which

a search warrant is issued, shows that the reason for his be-
lief that an offense is being committed upon certain premises
is information conveyed to him, instead of facts known to
him personally, will not invalidate the same.   (p. 279).

5.   CRIMINAL LAW—*Verdict on Conflicting Evidence Not Set Aside
on Appeal Unless Against Weight of Evidence.*

The verdict of a jury based upon a conflict between oral
evidence and inferences proper to be drawn from circumstances
and facts which appear in the case, will not be set aside by
this Court, unless there is such a preponderance against the
verdict as to indicate that the jury were influenced by passion,
prejudice, or some other improper motive.   (p. 283).

Error to Circuit Court, Berkeley County.

Henry Kees was convicted of aiding and abetting in the
operation of a moonshine still; and he brings error.

*Affirmed.*

*A. C. McIntire* and *John H. Zirkle,* for plaintiff in error.
*E. T. England,* Attorney General, and *R. Dennis Steed,*
Assistant Attorney General, for the State.

RITZ, JUDGE:

Upon an indictment charging him in one count with owning
operating and maintaining a moonshine still, and in another
with aiding and abetting in the operation of such a still, the
defendant was tried and found guilty upon the latter charge
by the verdict of the jury, upon which a judgment was en-
tered by the court, to review which he prosecutes this writ of
error.

The matters relied upon for reversal of the jujdgment are
the action of the court in admitting certain evidence, which
it is contended was procured by an unlawful search and seiz-
ure, and the insufficiency of the evidence as a whole to sus-
tain the verdict.

Before entering upon the trial of the case the defendant
filed with the circuit court a petition in which he alleged that
his premises had been searched by deputy sheriffs under the
authority of an alleged search warrant; that said search

warrant was void for the reason that it was issued upon a void complaint, and this is the ground of the principal assignment of error in this case. The complaint upon which the warrant was issued follows:

"State of West Virginia, County of Berkeley, to-wit: Personally appeared before me, the undersigned authority, in and for the said county aforesaid William Dean, sheriff who being by me first duly sworn (upon information) under oath, complains and says, that he has cause to believe, and does believe that intoxicating liquors, as defined by Sec. 1 of Chapter 13, Acts of the Legislature of 1913, are being manufactured, sold, offered, exposed and stored for sale or barter in said county aforesaid in that certain premises of Henry Kees near Mt. Glenn Orchard contrary to the laws of the State of West Virginia, and he, the said Wm. Dean, sheriff therefore prays that the said premises of Henry Kees near Mt. Glenn Orchard be searched and that all liquors found therein, together with all vessels, bar fixtures, screens, glasses, bottles, jugs and other appurtenances apparently used in the sale, keeping or storing of liquors, contrary to law, be seized and held to be further dealt with according to law. Dated this 26th day of August 1921. William Dean, Sheriff B. C. Taken, subscribed and sworn to before me this 26th day of August, 1921. Fred H. Baker, Justice of Peace B. C."

The objection to the complaint is that it appears upon its face that it was made by the affiant upon information, and not upon facts known to him, and that it was the duty of the justice of the peace to examine the witnesses and determine judicially whether there was cause for the issuance of the warrant, instead of issuing it upon an affidavit that the complaining party had reason to believe, and did believe, that the offense was being committed. The argument is that the issuance of a search warrant by a justice of the peace or other officer is a judicial act, and that the officer issuing it must inquire into the facts and determine for himself that they constitute probable cause before issuing the warrant, whereas, in this case, it appears that the warrant was issued simply upon an affidavit made by the sheriff that from information

in his possession he had reasonabde cause to believe, and did believe, that an offense was being committed. In the case of *State* v. *Brown,* 91 W. Va. 709, decided at this term of the court, we held that an affidavit made in compliance with the statute of itself would constitute probable cause upon which a justice might issue a search warrant without further inquiry. An attempt is made to distinguish that case from the instant case, and we are also asked to review the holding there made. There is no substantial difference in the complaint in the two cases. The difference between them is more apparent than real. In the Brown case the complainant simply swore that he had reason to believe, and did believe, that intoxicating liquors were being sold upon the premises sought to be searched. In the instant case the complainant swears that from information which he has he believes, and has reason to believe, that intoxicating liquors are being manufactured upon the premises which it is desired to have searched. The only distinction in the two cases is that in the Brown case the complainant did not give the ground of his belief, while in the instant case the sheriff who makes the affidavit says that his belief is induced by information in his possession, so that it will be seen that there is really no substantial difference in the two complaints, except that in the instant case the complaint is a little fuller, and that it specifies the basis of the affiant's belief. We are, therefore, called upon to determine again whether a complaint made in the form prescribed by the statute constitutes probable cause upon which a justice or other officer may issue a search warrant. The constitutional provision inhibiting the issuance of any search warrant, except upon probable cause shown by information under oath or affirmation, is appealed to by the defendant as requiring the justice or other officer, to whom application is made for the issuance of the warrant, to institute an inquiry and determine judicially whether or not there is such probable cause. Upon the other hand, it is urged that it is competent for the legislature to prescribe what shall constitute probable cause for the issuance of such warrant, so long as it does not permit the issuance

thereof otherwise than upon an information under oath or affirmation. There are many authorities which hold that in no case may a justice of the peace issue a search warrant except upon an inquiry made by him, and the determination, after such inquiry, that the facts thereon disclosed constitute probable cause that an offense is being committed. *State* v. *Peterson,* (Wyoming), 194 Pac. 342, 13 A. L. R. 1284 and note; *Swart* v. *Kimball,* 43 Mich. 451. A great many other authorities might be cited to the same effect. There is another line of authority to the effect that the legislature may prescribe that a complaint made in a certain way, and containing certain substance, shall constitute probable cause, and that a justice or other officer, upon the filing of such complaint with him, is justified in issuing the warrant without further inquiry. *Commonwealth* v. *Certain Lottery Tickets,* 5 Cushing 369; *Dupree* v. *The 'State,* 102 Tex. 455; *Rose* v. *The State,* 171 Ind. 662; *Lowrey* v. *Gridley,* 30 Conn. 450; *State* v. *Nowlan,* 64 Me. 531; *Lincoln* v. *Smith,* 27 Vt. 328; *State* v. *Davie,* 62 Wis. 305. A perusal of the authorities we have cited will illustrate the divergence of judicial decisions upon this question. It occurs to us that the conflict arises because of the different views that the courts apparently have as to the purpose sought to be accomplished by the constitutional provision. Some of the courts apparently have the view that the constitutional inhibitions against unreasonable searches and seizures, and against the issuance of any warrant therefor, except upon complaint made upon oath or affirmation, were for the purpose of guaranteeing to the citizen an immunity which he did not theretofore possess, while the other line of authorities is based upon the view that these constitutional inhibitions were for the purpose of guaranteeing to the citizen a right or immunity already possessed by him. In the application of any constitutional provision it is always important to inquire what was the state of the law at the time such provision became part thereof. Under the common law in effect in this country at the time of the adoption, not only of the Federal Constitution, but of the various state

constitutions, search and seizure warrants were issued, but they were only allowed to be issued upon a complaint made upon the oath or affirmation of the party seeking the same. The English Constitution had guaranteed to the citizen this immunity to his person and premises from search and seizure from a time whereof the memory of man runneth not to the contrary, and we think it may be said that when the constitutional provision relied upon came into the organic law of the American states, the purpose was to preserve to the citizen the right then enjoyed by him under the common law of England. It cannot be doubted but that under the common law a complaint made upon the information of the party desiring the issuance of the warrant, in the form of the complaint involved in this case, would have constituted probable cause for the issuance thereof. In fact, an examination of the authorities shows that the usual complaint upon which a search warrant was issued at that time was that the affiant had probable cause to suspect, and did suspect that an offense was being committed upon particular premises under the control of particular parties. Davis's Criminal Law, page 527; 2 Hale P. C. 150. Our statute requires more than was required at common law. Under the statute involved here the informer must not only have reason to suspect and actually suspect that an offense is being committed, he must believe, and have reason to believe that such offense is being committed before the warrant may be issued. If the legislature undertook to permit the issuance of a search warrant upon a complaint not so informative in its terms as the complaint upon which such a warrant could be issued at common law, then it might be contended that such a statute would transcend the legislative competence. When, however, the legislative act requires more of the informer than ever, the legislative act requires more of the informer than was required at common law, we cannot say that it was not competent for the legislature to prescribe such a rule of evidence, and to make such complaint probable cause for the issuance of a search warrant. We do not mean to say that a justice would have to issue a warrant upon the presentation of such

complaint to him.  That question does not now arise.  What we do hold is that it was competent for the legislature to pass thé act which it did so far as it prescribed what shall constitute probable cause for the issuance of a search warrant, and that a search warrant issued by a justice upon such showing is not void.  It may be that the justice, under some circumstances, would be justified in refusing to issue a·warrant upon such a showing.  The character of the party making the complaint, or other circumstances appearing, might lead him to the belief that there was lack of good faith, or lack of substance in the charge, in which event it may be that he would be entirely justified in refusing the warrant until he made further inquiry as to the ground upon which it was asked.  We are not called upon at this time, however, to pass₁ upon that question.  Upon a careful review of all of the authorities which we have been able to consult we are of the opinion that a search warrant issued by a justice, or other officer authorized to issue the same, upon such a complaint as was filed in this case, is a proper warrant, and that evidence procured by means thereof may be properly introduced upon the trial of one charged with an offense, if otherwise pertinent.

The other assignment of error challenges the sufficiency of the evidence to justify the jury's verdict.  As before stated, the defendant was indicted in one count for owning, operating and maintaining a moonshine still, and in another for aiding and abetting in the operation of such a still.  He was acquitted upon the first count, and found guilty upon the second.  The evidence shows that the defendant owned a farm containing sixty some acres; that his dwelling house thereon was situate some half mile from the road, and was reached by a private way.  On the occasion of the search of the premises, the officers charged with the duty went there and found the defendant and one of his sons at home.  They made a search of the house and found a very small quantity of moonshine whiskey contained in a fruit jar.  They also found twelve boxes of dried or evaporated peaches, each box containing twenty-five pounds, of a particular brand,

and upon which boxes was stamped the name of the packer, as well as the name of the merchant who sold the same to the defendant. There was also discovered three hundred pounds of sugar upon the defendant's premises. Just what connection sugar might have with the manufacture of whiskey is not disclosed by the evidence. Upon an examination of the rear of the defendant's house, it was discovered that a path led therefrom up a hollow into the woods. The officers followed this path and at some distance from defendant's house came upon a still in full operation. This still was located in the hollow near a spring, the water being piped from this spring into the tub which held the worm for the purpose of cooling the liquor as the same passed therethrough. There were a number of jars of the finished product around the still, as well as a five-gallon jug, which was almost full of whiskey, and a jar was then under the end of the worm, from which the fluid was being discharged, in process of being filled. There was also some mash in containers at this place, which mash was made largely from peaches. There were found also six empty boxes which, from the marking thereon, had contained evaporated peaches of the same brand as those found in the defendant's house. Upon these boxes was the name of the same packer and the name of the same merchant that was upon the boxes found at defendant's residence. The defendant denied any knowledge of the still in the hollow, and attempted to show, and did show, that this place was not upon his farm, and might be reached by paths from other places. It is shown that the path leading directly from the defendant's house to the spring was a well-worn, and frequently and recently used path, so that the jury could not but believe that someone living at the defendant's house made frequent use of the path between that house and the still. This fact, together with the fact that the boxes found at the still correspondeded exactly with the boxes containing evaporated peaches found in the defendant's house, was sufficient to justify the jury in coming to the conclusion that the defendant was at least aiding and abetting in the operation of that still. His explanations and denials were, no doubt,

carefully considered by the jury upon the trial, and we cannot say as matter of law that they were sufficient to overcome the appearances which so strongly testified against him.

Our conclusion is, therefore, to affirm the judgment complained of.

*Affirmed.*