# CHARLESTON.

GUYANDOTTE COAL COMPANY    *v.*    VIRGINIAN ELECTRIC & MACHINE WORKS.

Submitted May 8, 1923.    Decided June 19, 1923.

1. SALES—*Secondhand Mining Machine Held Sold Under Implied Warranty.*

    When by a written order a 12AA second hand Goodman Mining Machine is to be delivered to the plaintiff f. o. b. Birmingham, Alabama, sight draft attached to bill of lading for $3500.00, there is an implied warranty that when said machine is delivered f. o. b. at the place stated, it is to be a merchantable second hand machine, and such a machine as will perform the service for which it is ordered in a reasonably satisfactory manner. (p. 305).

2.   PRINCIPAL AND AGENT—*No Contract on Order by Commercial Traveler, Until House He Represents Accepts It.*

In the absence of evidence to the contrary, the presumption is that an order for goods taken by a commercial traveler is subject to the approval of the house which he represents. and no contract results until such order is accepted.(p. 304).

3.   EVIDENCE—*Oral Statements of Commercial Salesman, Made Before Written Order Prepared and Signed by Purchaser, Will not Alter its Effect.*

The contemporaneous oral statements of a commercial salesman, made before a written order is prepared and signed by the purchaser, will not change or alter the effect of said order or impress upon it a different warranty than that implied by the writing.   (p. 310).

4.   APPEAL AND ERROR—*Verdict not Disturbed. Unless Contrary to Evidence or Without Supporting Evidence.*

Where a case has been tried and the questions of fact arising therein submitted to a jury, and it appears there has been no error of law committed by the lower court, this court will not disturb the verdict unless it clearly appears that the same is contrary to the evidence, or that there is no evidence to support it.   (p. 306).

5.   SAME—*Errors in Admission or Rejection of Evidence, not Made Grounds of Motion for New Trial or Subjects of Special Bills of Exception, Showing Evidence and Rulings, Deemed Waived.*

Errors in the rulings of the trial court, upon admission and rejection of evidence, are deemed to have been waived, if they are not made grounds of the motion for a new trial, nor made subjects of special bills of exceptions showing the evidence and the ruling of the court thereon.   (p. 307).

Error to Circuit Court, Kanawha County.

Action by the Guyandotte Coal Company against the Virginian Electric & Machine Works.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Minter & McNemar,* and *Morton, Mohler & Peters,* for plaintiff in error.

*Mathews, Campbell & McClintic,* for defendant in error.

McGINNIS, *Judge:*

This suit is an action of trespass on the case in assumpsit.

The declaration contains a common count in assumpsit and also a special count, setting up that on the......day of July, 1920, the plaintiff purchased from the defendant for immemiate use, a certain mining machine of the Goodman type, described as a 12AA Goodman machine, which was represented to the plaintiff by said defendant to be in good condition and working order and practically as good as a new machine of the same kind and make, and to have been used for a less time than one year, at the price of $3500.00 to be delivered by the defendant to the plaintiff in a reasonable time from the date of purchase f. o. b. Birmingham, Alabama, freight allowed to Kitchen, W. Va., sight draft attached to bill of lading, and to be paid by the defendant on the arrival thereof at Kitchen, West Virginia.

> "And the plaintiff further avers that the said Goodman Machine so sold to it as aforesaid by the defendant was, by the defendant at the time of sale, represented to be equipped with trucks of the gauge of......inches, whereas the tracks in the plaintiff's mine on which said trucks would run were and are of the gauge of 48 inches, and it was further represented by the defendant to the plaintiff that, when the trucks of said machine should be changed to the gauge of 48 inches, the said machine would be in condition for immediate use by said plaintiff. At the time when plaintiff purchased said machine it became and was necessary for the plaintiff in order to use said mining machine to purchase from the manufacturer of said machine the parts needed to change the gauge of its said trucks from the then existing gauge thereof to the gauge of 48 inches, all of which the defendant then and there had notice. And in consideration thereof and that the said plaintiff at the like instance and request of the said defendant, did then and there undertake and faithfully promise the said defendant to accept and receive the said Goodman 12AA mining machine and to pay for the same at the price aforesaid, the said defendant, undertook and then and there faithfully promised

the said plaintiff to deliver the said machine to the said plaintiff as aforesaid.

The said plaintiff avers that immediately upon the making of the aforesaid contract between the parties as aforesaid it proceeded to purchase, and did purchase, from the manufacturer of said machine the necessary parts to change the gauge of the trucks of said machine from the then existing gauge to the gauge of 48 inches, and which said parts were of the value of, to-wit: $500.00, in order that said parts might be received by the plaintiff and be available for use immediately upon the arrival of said machine at Kitchen, W. Va., of all which the defendant had notice. And the plaintiff avers that on the...... day of Sept., 1920, the said defendant delivered to the said plaintiff f. o. b. Birmingham, Alabama, freight allowed to Kitchen, W. Va., sight draft attached to bill of lading, a Goodman 12AA mining machine representing the same to be the mining machine sold to the plaintiff by the defendant, and the plaintiff then and there paid to the defendant upon the arrival of said machine, at Kitchen, West Virginia, the sum of $3500.00 as and for the price of the said machine so sold to it by said defendant; that the said Goodman Mining Machine so delivered as aforesaid was not merchantable and was not of good and suitable material, had been used for a greater time than one year and was not in practically as good condition as a new mining machine of the same kind and make would be in, but was badly out of repair and not in working order and had many of its parts broken and totally worthless to said plaintiff; that the said plaintiff immediately upon discovery that the said mining machine was unsuitable, and unfit for use and totally worthless to the said plaintiff, to-wit, on the....... day of Sept., 1920, notified the said defendant that said mining machine was not according to the contract between the parties, and the same was held at the defendant's risk and subject to its order.''

On July 16, 1920, the plaintiff was engaged in the coal business at Kitchen, Logan County, O. G. Callihan was its Superintendent, R. C. Scott was its Assistant Superintendent and G. W. Hill was its Mine Foreman. The defendant,

the Virginian Electric & Machine Works, was engaged in selling electrical and other mine supplies, with its place of business in the City of Charleston; E. M. Keatley was its President, William Crichton its General Manager, and H. C. Harker was, at the time, its traveling salesman and traveled in the Logan and N. & W. Coal Fields, with headquarters at Huntington, W. Va. His duties were to call on the mines and sell mine supplies. On the 15th day of July, 1920, Harker had a conversation with the plaintiff's mine foreman at Kitchen, in which Harker told the mine foreman about a Goodman 12AA machine which Harker said was at the time owned by the defendant, his employer, that the machine was in good condition and had only been used a few months, by the Empire Coal Co. at Birmingham, Alabama; that on the same day Mr. Callihan, Superintendent of the plaintiff's works, called him over the telephone and asked about this machine, about which he, Harker, had described to the mine foreman and asked if his company still had those machines, he told him yes, and Callihan requested him to come to Kitchen the next day, that his company wanted one of the machines in a hurry. Harker called on Callihan at Kitchen on the next day, July 16th, 1920, and represented the machine to Callihan as it had been represented to him, that the machine was supposed to be in first class condition, that it had only been run a very short time, and it was too high for the coal where it had been used, and the reason the company where they had been using it desired to get rid of it, was that they were replacing it with a low vein machine, and the Guyandotte Coal Company could have immediate delivery of the machine, and that they closed the deal for the machine at $3500.00.

Harker also testifies that he obtained his information as to the description and condition of the machine from Mr. Crichton, general manager, of the defendant. The question as to whether this sale made by Harker was a completed transaction or was subject to the ratification or rejection of the defendant is raised in this case. Harker was a traveling salesman. There seems to be no attempt to show that Harker

was authorized to make this sale binding upon his employer, the defendant. Since there is no evidence showing said authority, we do not think that he had such power. The case of *Bauman* v. *McManus et al,* 10 L. R. A., N. S., 138, held that:

> "Since in the absence of evidence to the contrary the presumption is that on order for goods taken by a commercial traveler is subject to approval by the house which he represents and no contract results until such order is accepted, etc. * * * *"

The authority of Harker to warrant the condition of the machine is specifically denied. The written order signed by Callihan, contains no express warranty of this machine. It is addressed to the defendant at Charleston. The only description given is, "1—12AA Goodman Machine Second Hand". Can the plaintiff engraft a warranty upon this written order to conform to the statements of salesman Harker as to the condition of the machine? We think not. This machine had not been seen by the defendant or examined by the plaintiff. It was well understood by the plaintiff that it was to be delivered to it f. o. b. Birmingham, Alabama.

We conclude, from the evidence, that the machine purchased, although a second hand machine, was, under the written order, impliedly warranted to be such a second hand machine as would perform the service for which it was purchased after the trucks had been changed so as to make it conform to the tracks in plaintiff's mines. It was under that written contract, if accepted by the defendant, warranted to be in reasonably good condition and, if properly operated, would cut coal in the mines. If plaintiff had desired, at the time of signing the written order, to have the condition of the machine guaranteed, as represented by the salesman Harker, he should have written the same in the order. Now it can be reasonably inferred, from the evidence in the case, that the plaintiff would not have been induced to purchase a machine and pay $3500.00 for it, at a time when plaintiff was in need of a machine for immediate use, unless the machine was in reasonably good condition and would perform the services required of it. This is the character of a machine

that was to be loaded f. o. b. Birmingham, Alabama, and shipped to plaintiff at Kitchen, West Virginia, under the terms of this written order. The testimony offered by the plaintiff tends to show that the machine when unloaded at Kitchen did not measure up to these requirements, that it was not in a condition, when it arrived at Kitchen, to cut coal in the mines and that the defects in the machine were not such as could have been caused by the manner in which it had been handled on board the car, or by any accident to it which might have occurred en route from Birmingham to Kitchen or by exposure to the weather. On the contrary the defendant shows, by its witnesses who loaded the machine and billed it from Birmingham, that the machine, when loaded, was in good condition, that its efficiency at the time it was loaded was 100 per cent. and its depreciation 5 per cent., and under these contradictory statements, unless the lower court has erred upon some question of law, we would not disturb the verdict of the jury.

Again, the defendant, by its witnesses Keatley and Crichton, states that the defendant positively refused to make any warranty on the machine, and that this conversation took place before the order was accepted by the defendant. Crichton, General Manager of the defendant, states that on the day he received the order, July 17, 1920, he talked over the telephone with Callihan, the Superintendent of the plaintiff; that he was called by Mr. Harker, who said that, ''Callihan was there and wanted to talk to me further about the machine. Mr. Callihan got on the 'phone, and asked me if we had that machine, and if we would guarantee it in good condition, practically as good as new. I told him that we had offered these machines subject to their inspection and prior sales and while we had that machine on our list for sale, we wasn't positive that we could get it, but we felt pretty sure we could, but we couldn't guarantee anything, that the only thing I could tell him was just exactly what the other fellow had told me.''

This conversation took place, if it did take place, before the machine had been ordered by the defendant from the

Empire Coal Company, in Alabama, and before the order had been accepted by the defendant, and in this same conversation Crichton says that after he had told Callihan that he had never seen this machine and could not make any guarantee about it but could only tell him what the other fellow told him, Callihan directed him to go ahead and try to get the machine.

This conversation is denied by Callihan who states that on the morning after the purchase was made: "I was called on the long distance telephone from Charleston and someone on the other end, said it was Mr. Crichton, and asked me what Mr. Harker had represented the machine to be? My answer to him was, that it was practically a new machine and in first class condition. Mr. Crichton's answer was that he wanted to know, then he rang off and that was the extent of our conversation and the only conversation I had with any member of the Virginia Electric and Machine Works with regard to the purchase of the machine, with the exception of Mr. Harker."

It would seem that if the conversation, as testified to by Crichton, is true this would entirely relieve the defendant of any liability under this contract of sale of the machine in question. It had in the final contract specifically refused to guarantee the condition of this machine and the plaintiff's superintendent had told Crichton to go ahead and order the machine, thus implying that the plaintiff would take the risk.

Thus it will be seen that the defendant had, by its testimony, shown two complete defenses to the suit: First, the warranty implied in the written order had not been breached, such a machine as was contemplated, under the implied warranty in the contract, was loaded f. o. b. Birmingham, Alabama, and shipped in accordance with the written order. Second, the defendant positively refused to warrant this machine in any way, and the plaintiff purchased the same at its own risk. Now the evidence introduced by the defendant shows that this machine was in good condition, 100% in efficiency and only 5% depreciated, when loaded on the car in Alabama, and shipped as directed in the written order to the plaintiff at Kitchen. The evidence of the plaintiff, how-

ever, tends strongly to show the contrary, Callihan flatly denies the conversation detailed by Crichton. These questions were for the jury and this court will not disturb its verdict unless the lower court has committed some error in law, and, in passing upon this question, we find numerous assignments of error in plaintiff's petition, many of which are also assigned in the brief of its counsel. There are many of these errors referred to in the plaintiff's petition which go to the introduction of testimony. There seem to be no legal reasons set forth and discussed in the plaintiff's brief why the court erred in refusing or permitting this testimony to go to the jury, and no argument is offered touching the question as to whether or not the action of the court in overruling the objection by the plaintiff or in sustaining the objection by the defendant, was prejudicial to the plaintiff. There are no special bills of exceptions setting up these questions and exceptions or giving the answers to them. This court has, in many cases, held that:

> "Errors in the rulings of the trial court upon admission and rejection of evidence are deemed to have been waived if they are not made grounds of the motion for a new trial, nor subjects of special bills of exceptions showing the evidence and the ruling of the court thereon."

*Bailey* v. *Bank*, 77 W. Va., 329; *Parr* v. *Howell*, 74 W. Va., 413; *Ireland* v. *Smith*, 73 W. Va., 755.

Judge Williams in the opinion of the court in the case last cited, says:

> "During the trial the court overruled the defendants' motion to exclude certain testimony, but there is no formal bill of exceptions specially calling our attention to that error, nor does it appear that the trial court's attention was called to it on the motion for a new trial. Apparently the only ground offered in support of the motion for a new trial is that the verdict was contrary to law and evidence. Not having called the lower court's attention to the error now complained of in one of the above ways, under the rule long established by this court, the error will be treated as waived."
>
> 94 W. Va.

The record in the present case discloses that the only grounds assigned for setting aside the verdict was, "that it was contrary to the law and evidence." In the case of *State* v. *Hughes*, 73 W. Va., 706, Syl. pt. 4, the court held:

> "This court does not consider, and will treat as waived, a claim that evidence was improperly admitted over objection and exception, unless by bill of exceptions attention is directed to the evidence complained of. A bill of exceptions making all the evidence in the case part of the record will not avail, though therein is noted the introduction of such evidence and the objection and exception thereto, unless the record discloses reliance on such objection in support of a motion for a new trial."

This rule, as shown by the cases cited, applies alike to civil and criminal cases. It is a rule adopted and enforced out of fairness to litigants and fairness to trial courts, and one of its proper purposes is to prevent successful reliance upon a multitude of objections, interposed throughout a long trial and never specifically or sharply brought to the attention of the trial judge but reserved unnoticed, as a possible ground of technical error, to be relied upon by the unsuccessful litigant after a full trial on the merits.

The observance of this rule disposes of the first 28 assignments of error set up in the plaintiff's petition.

Plaintiff assigns as error the action of the court in refusing to give to the jury plaintiff's instructions, No. 1A, No. 1, No. 2, No. 5, No. 6, No. 10, No. 11 and No. 12.

The court did not err in refusing to give plaintiff's instruction No. 1A, for the reason that there is no evidence showing that Harker had the authority to make these statements and, if he ever had such authority, the contract was afterwards reduced to writing, which writing omits the statements made by Harker in reference to the condition of the machine and the length of time it had been used. Harker's statement, as to the condition of the machine, cannot be made a part of the written contract. The contract is complete and unambiguous. The order for this machine is as follows:

"Virginian Electric & Machine Works, Charleston, W. Va., date, July 1st, 1921, bill of Guyandotte Coal Co., address Kitchen, W. Va., ship to same address, same customer on No......., ship freight, when, terms, salesman H. C. H., 1 12AA Goodman Machine, second hand, f. o. b. Birmingham, Alabama, freight allowed, sight draft @ $3500.00. Please get car number that this is shipped in and keep tracing it, as they are in a hurry for it H. C. H., Signed Guyandotte Coal Co., O. G. Callihan, Superintendent."

This order stripped of its superfluous verbiage, means that a 12AA second hand Goodman machine was to be delivered to the plaintiff f. o. b. Birmingham, Alabama, freight to be paid by the Virginian Electric & Machine Works and a sight draft for $3500.00 was to be attached to the bill of lading, the shipment to be traced and hurried. This after being accepted by the defendant, constituted the contract, and contemporaneous oral statements of Harker, the salesman, cannot be engrafted upon it. *Braude & McDonnell, Inc.* v. *Isadore Cohen Co.*, 87 W. Va. 763; *Manufacturing Co.* v. *Smith*, 79 W. Va. 736; *Moore* v. *Henry*, 76 W. Va. 269; *Griffin* v. *Runnion*, 74 W. Va. 641.

There was no error committed by the trial court in refusing plaintiff's instruction No. 1, for the reason stated above and for the further reason that whatever may have been the representations made by the salesman Harker, the defendant had the right to repudiate the same at any time before the contract was accepted by it, and this instruction would deny the defendant that right and fix the liability upon it solely upon the representations of Harker, whether known by the defendant or not, and there is evidence in this case, disclosed by the testimony of Crichton, that the defendant, before this order was accepted, specifically refused to guarantee the machine as represented by Harker.

The trial court was justified in refusing to give plaintiff's instruction No. 2 for the reasons given above justifying the court in refusing to give instruction No. 1A.

Plaintiff's instruction No. 5 tells the jury that as a matter of law, in this case, the title of the machine in question did not pass until the machine was received at Kitchen siding

and accepted by the plaintiff, notwithstanding. the intention of the parties at the time the contract was made, which intention the jury unquestionably had the right to pass upon from the evidence in the case. The plaintiff alleges, in its declaration, that the machine was to be delivered to the plaintiff at Birmingham, Alabama, and there is evidence in the case, aside from the written contract, from which the jury could reasonably draw the inference that it was the intention of the parties that the title passed when the machine was loaded on the car at Birmingham, Alabama, and it was not error in the lower court to refuse this instruction.

Instruction No. 6 instructs the jury to disregard all the evidence of C. P. Moore, Superintendent of the Empire Coal Company, and stated, as a fact, that Moore testified that he knew nothing about the machine except what was told him by someone else. The record shows that this witness testified to other material facts that were not upon information but upon actual knowledge. He testified when the machine was installed as new, and when it was taken from the mine, what his instructions were to the electrician, Gillison, and that he saw Gillison with two assistants working on the machine. He knew and testified and this testimony was brought out on cross examination without objection, the tonnage record of this machine kept under his management. All this testimony tended to show the good condition of the machine when loaded on the car at Birmingham, Alabama. This testimony was material and proper and should have been considered by the jury and the court did not err in refusing to give the instruction to disregard it.

Instruction No. 10, if given, would have told the jury to disregard all transactions had with the Empire Coal Company with reference to the mining machine in question. This instruction is manifestly wrong in view of the testimony of William Crichton, in which he told the plaintiff's superintendent that he did not know that the defendant could get the machine, that he could not guarantee it and he was told by Callihan to go ahead and get it. Harker stated that the defendant had an option on, or had taken over, six machines

from the Empire Coal Company, and the machine in question was admittedly one of the six machines referred to by Harker. Crichton, in his conversation over the telephone, had told Callihan that he would order the machine not to be shipped unless in good condition and this was done, and the order shows it was to be shipped from the Empire Coal Company. The only testimony introduced as to any transaction between the Virginian Electric & Machine Works and the Empire Coal Company is as to the placing of the order for the machine, in accordance with the telephone conversation and agreement to do so, and the sending of the shipping order as re-written to comply with and in accordance with such telephone conversation and the directions given in the letter of July 20, 1920, likewise under and in strict accordance with the agreement reached and directions given in the Crichton-Callihan telephone conversation. This was not only admissible and competent, but it was necessary to prove in order to show that the defendant had complied with the contract and discharged the obligation, under its theory and evidence of what the contract was, and the trial court did not err in refusing to give this instruction to the jury.

Instruction No. 11 is too vague and indefinite and the court did not err in refusing to give the same to the jury.

The trial court did not err in refusing to give the plain'tiff's instruction No. 12.

This instruction, if given, would have told the jury, in effect, that the place of delivery under the contract was at Kitchen, and that the plaintiff had the right to inspect and reject the machine at that point notwithstanding, that under the contract and under the manifest intention of the parties as disclosed by the evidence, this machine was to be delivered at Birmingham, Alabama, at that point the plaintiff had the right to examine and reject the machine, and there is no evidence showing that the plaintiff requested or attempted to inspect the machine at Birmingham, while on the contrary, this right was tendered it and it refused this privilege, and the defendant was told to go ahead and get the machine. It is quite true that Callihan denied the conversation with

Crichton to that effect, but this instruction, if given, would have taken the decision of these material facts out of the hands of the jury. The jury had the right to decide whether or not, under the evidence, the plaintiff declined to inspect the machine at Birmingham, and whether or not the plaintiff under the evidence agreed to take the risk. The obligation of the defendant was fully met when it caused to be delivered f. o. b. Birmingham, Alabama, a merchantable second hand mining machine of the type ordered.

There was no error committed by the trial court in giving defendant's instructions No. 1, No. 2 and No. 3, they embody the law applicable to this case.

Finding no error in the judgment, we affirm it.

*Affirmed.*