# CHARLESTON.

## STATE *v.* JOE NOBLE.

Submitted April 29, 1924.   Decided May 13, 1924.

1.  SEARCHES AND SEIZURES—*Premises to be Searched Held Sufficiently Described.*

    A: searcĥ and seizure warrant issued under the provisions of chapter 32A, Code, which describes the premises to be searched as "that certain two story frame dwelling house, being the home of said Joe Noble, situate on Thompson avenue in the City of Moundsville county and state aforesaid," is not void for indefinite description of the premises to be searched, being sufficient in other respects. It describes with sufficient particularity the place to be searched. (p. 435).

2.  INTOXICATING LIQUORS—*Search Warrant Not Void Because Executing Officers Did Not Endorse Manner of Execution Thereon.*

    Such search and seizure warrant upon which officers made a search and seizure of moonshine liquor found in the premises described in the warrant is not void because the officers executing the warrant did not endorse a return thereon showing the manner in which it was executed. (p. 435).

3.  CRIMINAL LAW—*Law Requiring all Instructions by Court on Own Motion to be in Writing and First Submitted to Counsel, Mandatory.*

    Section 22 of chapter 131, Barnes' Code 1923, requires that all instructions given to the jury by the trial court on its own motion must be in writing and first submitted to counsel upon each side with opportunity to object thereto. This rule of practice prescribed by the legislature is mandatory; and it is error for the court to give to the jury on its own motion instructions in writing without first submitting the same to counsel. (p. 437).

4.  SAME—*Assignments of Error to Rulings on Evidence Waived if Not Made Ground for New Trial or Subject of Special Bills of Exceptions; Motion to Set Aside Verdict for Erroneous Rulings on Evidence Must be Specific.*

    Alleged errors in the admission or rejection of evidence are deemed to have been waived if not made grounds of the motion for a new trial, or the subject of special bills of exceptions showing the evidence and rulings of the court

thereon.   A motion to set aside the verdict because of errors
in admitting or refusing evidence, must be specific and not
general.  The trial court's attention must be directed to the
particular evidence introduced or refused which is claimed
as error.  (p. 436).

5.   SAME—*Accused Entitled to Instruction on Requirement of
     Unanimity -of Verdict; Refusal of Instruction that Juror
     Should not Agree to Conviction Opposed to Reasonable
     Doubt Held Erroneous.*

     The accused in a criminal case is entitled to an instruc-
     tion upon the requirement of unanimity in the verdict; and
     it is error to refuse an instruction telling the jury that if
     any juror has a reasonable doubt as to the guilt of the ac-
     cused, after hearing the evidence, receiving the instructions
     of the court and listening to the arguments of counsel, such
     juror should not agree to a conviction that is opposed to
     such doubt.  (p. 440).

Error to Circuit Court, Marshall County.

Joe Noble was convicted of the unlawful possession of
moonshine liquor, and he brings error.

*Reversed, verdict set aside, and new trial.*

*Martin Brown,* for plaintiff in error.

LIVELY, JUDGE:

Defendant, Joe Noble, prosecutes this writ of error to a
judgment of the circuit court entered January 26, 1923,
sentencing him to confinement in jail for three months and
to the payment of $100 fine, and directing that he perform
labor on the county roads until the fine and costs are paid.
The indictment charges him with having had in his possession
a quantity of moonshine liquor, upon which charge a jury
found him guilty.

F. M. Howard, a deputy sheriff, and private U. L. Craw-
ford of the state constabulary, under authority of a search
warrant issued by a justice of the peace, went to defendant's
dwelling on Tomlinson avenue in the city of Moundsville
to search for intoxicating liquors.  Howard went to the back
part of the house, and Crawford entered at the front door.
Defendant occupied two rooms at the rear of the building

which was two stories in height and of frame construction, the front portion being occupied by George Prostinak, the owner of the house. Howard, upon entering the rear into the kitchen, found defendant's wife Anna, and placed her under arrest, and stepped to the door to call Crawford, when she proceeded to throw a gallon jug into an iron sink where it was broken and the contents thrown partially over the floor. Howard smelled and tasted the spilled liquor and says it was moonshine liquor. Crawford did not taste the liquor but smelled it and testified that it was moonshine liquor. The officers upon search found in the cupboard from which defendant's wife had taken the jug, a five gallon jug and a one gallon jug, the larger of which contained a small quantity of moonshine liquor. There were several bottles and cans in the cupboard which the officers said had contained moonshine liquor. The confiscated jugs were placed in evidence together with their contents which Howard said was moonshine. Defendant and his wife testified that the liquor in the broken jug was wine which had been manufactured by defendant from white grapes for the purpose of home consumption. Defendant's father-in-law, Anthony Buksnys, who was present in the kitchen, said the broken jug contained wine or vinegar, and being called upon by the officer to smell it he said: "He smells kind of sour." Some of the friends and neighbors of defendant corroborate indirectly his and his wife's testimony. Defendant was at home that morning just before the officers came, and had been observed by witnesses living near, to meet automobiles which drove to within two or three hundred feet of the house, on Water street, and deliver packages to the occupants, after which the automobiles would drive away. At the particular time the officers came he had gone, according to the evidence, a short distance away to where his mother lived and had obtained a jug and put it in a sack and was returning to his home when he was met by his wife's little brother, and after a short conversation with him, he ran down toward the river, entered a green roadster car and drove away. The officers took the wife before the justice of the peace who issued the warrant, and she gave bond to answer an indictment. At

the following term this indictment was found, not against her, but against her husband.

The first point of error is that the search warrant is void because it does not particularly describe the property to be searched; that there was no return of the officer thereon; and hence all of the evidence of the officers who executed it was illegal. The search warrant describes the premises to be searched as "that certain two story frame dwelling house, being the home of said Joe Noble, situate on Thompson avenue in the city of Moundsville, county and state aforesaid." It appears from some of the witnesses that the house searched was on Tomlinson avenue, but others give the name of the street as Thompson avenue, notably the owner of the house, George Prostinak, who said the number of the house was 1311 Thompson avenue, containing six rooms, four of which at the front of the house he occupied and two at the rear occupied by defendant and his wife. We do not think the description of the premises to be searched is at all indefinite. Whether the name of the street is "Tomlinson" or "Thompson" avenue, a fact which is not at all clear, makes little difference. It was the two story frame dwelling house occupied by Joe Noble as his home. *State* v. *Montgomery,* 94 W. Va. 155, 117 S. E. 870. That no return was made on the search warrant showing how it was executed or that it was executed does not make it void. It is identified as the warrant upon which the officers made the search and seizure, and their evidence is full as to how it was executed. It is further argued that no probable cause was shown as the basis on which to issue it. The warrant was issued by the justice upon the affidavit of F. M. Howard, who, *upon information,* swore that on a certain day in the county Joe Noble did manufacture, sell, etc., intoxicants as defined by section 1 of chapter 13 of the Acts of 1913, contrary to the laws of the state, and that he had cause to believe and did believe that such liquors were being manufactured, sold, etc., in that certain two story frame dwelling house, being the home of Joe Noble, etc. The validity of warrants of this character issued by a justice upon complaint upon information was upheld in *State* v. *Kees,* 92 W. Va. 277, 114 S. E. 617, and in *State* v. *Montgomery, supra.* It would serve no useful

purpose to repeat the substance of what is contained in those cases. The search warrant being a valid one, it follows that the testimony relating to its execution, the search, finding of the liquor, and what transpired at the time, and the introduction of the jugs and liquors found in defendant's house, was admissible.

A motion to exclude the evidence of Oliver Schwob and wife, neighbors of defendant, who testified of their observation of defendant's actions on the morning immediately preceding the visit of the officers, because irrelevant and not tending in any way to incriminate defendant, was overruled. Their evidence was to the effect that they saw him meet automobiles which would drive near to his residence, then return to his house and deliver something to the occupants of the automobiles, who would then drive away. They could not tell what was in the packages delivered. Mrs. Schwob, upon being asked what was in the deliveries, replied that she supposed it was moonshine liquor. Objection was made to this statement, but the record is silent as to what action the court took thereon. There was no motion to strike it out; simply an objection. Of course it was improper for the witness to testify as to her suppositions. Her husband said he did not know what was in the packages, and expressed no opinion. We think this evidence was relative to the issue. Defendant was charged with having in his possession and selling moonshine liquor, and the jury could make legitimate inferences from his actions detailed on this Sunday morning. Alleged errors of the trial court upon the admission and rejection of evidence are deemed to have been waived if they are not made grounds of a motion for a new trial, nor made subjects of special bills of exceptions showing the evidence and the rulings of the court in its rejection or admission. *Guyandotte* v. *Virginia Electric & Machine Works*, 94 W. Va. 300, 118 S. E. 512; *Bartlett* v. *Bank of Mannington*, 77 W. Va. 329; *Halstead* v. *Horton*, 38 W. Va. 727; *Gregory's Admr.* v. *Railroad Co.*, 37 W. Va. 606. The motion for a new trial was based on the ground that the search warrant admitted in evidence was improper and the articles offered in evidence were not admissible, for that cause; that the instructions were wrong; that the verdict was contrary to the law and evidence;

and "on the ground of the admission of improper testimony." No specific testimony is pointed out in the motion, the admission of which defendant claimed as erroneous. The court's attention was not specifically directed to any particular evidence or ruling. In fairness to the trial judge his attention should be called specifically to the evidence which was rejected or admitted. That rule is accentuated by the alternate requirement that special bills of exceptions should be taken which always point out specifically the evidence in question. Trials often last several days, and many points are saved to the introduction and rejection of testimony, and it would be unfair to the trial judge to require him on a general assignment of the admission or rejection of testimony, to go over the entire record without the specific instances of error being pointed out to him on which the motion is based. As was said by Judge BRANNON in the case of *Gregory's Admr.* v. *Railroad Co., supra*: "It seems to me that reason, convenience and public justice conspire to sanction this rule. But for it a judge would have to retrace his steps, and grope through the infinite matters arising in a long trial—his thought not being called to review particular subjects, and often failing to review important ones; and thus error would be committed, and justice defeated. Rule and, I think, proper practice should require reasonable specification."

The state offered two instructions which were given over objection of defendant. In addition to these two instructions the court on its own motion gave the jury an instruction without having first submitted it to counsel for the prisoner, and this is alleged as error because violative of the statute, and because the instruction itself does not correctly propound the law. The statute, section 22, chapter 131, Barnes' Code, 1923, says: "The court may, on its own motion whether requested or not, in writing define to the jury the issues involved and instruct them on the law governing the case, but all such instructions shall first be submitted to counsel upon each side with opportunity to object thereto." In *State* v. *Clark*, 64 W. Va. 625, 644, we said the statute amounts to a rule of practice competent for the legislature to prescribe, and was mandatory. And in *Henderson* v. *Kessel*, 93 W. Va. 60, 116 S. E. 68, we held that the statute was mandatory and required

instructions given by the court to be in writing and that counsel should be given the right of reading and objecting to the instructions before given, accorded by the statute. It is not clear whether the instruction complained of in the instant case was reduced to writing before given to the jury; it is clear, however, that counsel was given no opportunity to inspect the instruction or to make objection thereto before it was given. We note, however, that objection and exception was made; when, it does not appear. If counsel does not know what instruction the court will give on its own motion until it is read to the jury, he would have no opportunity to prepare and present instructions to meet the new situation which would then be created. Under section 23 of chapter 131, Code, all instructions are read to the jury as the action and ruling of the court without reference to or disclosing the party at whose instance given. The jury is not supposed to know from which side of the controversy an instruction is inspired; and if counsel should be required to except or object to an instruction in the presence of the jury when read, of which he has no prior knowledge, in order to preserve his right, it would disclose to the jury the fact which the statute was designed to exclude from them, namely, the source of the instructions. It would place the prisoner and counsel at a disadvantage. But it is immaterial to inquire the causes or reasons which inspired the passage of the act; it is a mandatory rule of practice within the authority of the legislature to prescribe, and must be strictly followed. We are not called upon to say whether the rule is wise or unwise or what the reasons were which caused its enactment. We hold that it was error for the court to instruct the jury on its own motion without first reducing its instruction to writing and submitting the same to counsel for opportunity to object.

Defendant says it was erroneous to give instruction No. 1 which reads:

"The Court instructs the jury that, under the law of this state it is an offense for one to possess any quantity of 'moonshine liquor', and if you believe from the evidence in this case beyond a reasonable doubt that the defendant did possess any quantity of moon-

shine liquor, *however slight,* as alleged in the indict-
ment in the case, it is your duty to find him guilty.''

The criticism of this instruction is that the words ''how-
ever slight'' are too restrictive, and would make a person
guilty if he should find and take into his possession an
abandoned bottle which contained a few drops of moonshine
liquor.   Instructions are always interpreted in the light of
the evidence.  *State* v. *Dodds,* 54 W. Va. 289, 46 S. E. 228;
*Howes* v. *Railroad Co.,* 77 W. Va. 362; *Clinchfield* v. *Redd,*
123 Va. 420.  The five gallon jug contained a small quantity
of moonshine, and a portion of it was poured from the jug
and tasted and smelled by witness Howard, in the presence
of the jury, and he pronounced it moonshine liquor.   The
two officers testified that the contents of the broken jug at
the sink was spilled over the sink and a portion on the floor,
one saying it was moonshine liquor from taste, color and
smell, and the other that it was moonshine liquor from smell
alone.   The quantity of liquor contained in the large jug
in evidence was sufficient on which to base a conviction if the
jury found it had been unlawfully in the possession of de-
fendant.  The statute says a person is guilty if he has unlaw-
fully in his possession any quantity of moonshine liquor.  The
restricting words ''however slight,'' contained in the instruc-
tion, would not be misleading to the jury.  It was intended
to accentuate the fact that the possession of liquor in the large
jug, a portion of which was poured out in the jury's presence,
was sufficient to convict under the statute if they believed it
was unlawfully possessed by defendant, and we can see no
objection to this instruction under the evidence.

Instruction No. 2 is criticised as absurd.  It is as follows:

''The court instructs the jury that if, after consider-
ing all the evidence, you have a fixed conviction of the
truth of the charge, you are satisfied beyond a reason-
able doubt, then it is your duty to convict the defend-
ant.   The doubt which will justify an acquittal must
be actual and substantial, not a mere possible doubt,
because everything relating to human affairs and de-
pending on moral evidence is open to some possible
or imaginary doubt.  If you believe from the evidence,
beyond a reasonable doubt, that the defendant is guilty,

though you also believe it possible he is not guilty, you should convict the defendant."

The criticism of this instruction is that there is a difference between the meaning of the phrase "mere possible" and the word "possible". We do not see where the jury could have been misled by this instruction. Most of the instructions as to what is reasonable doubt are more confusing than enlightening. The instruction was designed to tell the jury that they should not entertain fanciful doubts as to the guilt of the accused. It may be observed that the many attempts to define "reasonable doubt" in the reported cases and by the text writers are not very instructive. The ordinary juror has about as clear understanding of the meaning of "reasonable doubt" as those who would attempt to instruct him. It may be observed that instruction No. 4 for defendant, on the question of "reasonable doubt," told the jury in substance that they should exclude every reasonable hypothesis except that of the guilt of the accused, and that only when no other supposition would reasonably account for all the conditions of the case establishing the guilt of the accused beyond all reasonable doubt as charged, could they arrive at the conclusion of guilt on his part. Considering these two instructions together (and instructions must be considered as a whole), we can find no error.

Defendant's instruction No. 5, refused, would have further instructed the jury as to reasonable doubt of the guilt of the accused, and also as to the unanimity of the verdict, saying as to the latter:

"And the court further instructs the jury that if any juror in this case has such a doubt after hearing the evidence in this case, receiving the instructions of the court and listening to the arguments of counsel, such juror should not agree to a conviction of the accused that is opposed by such a doubt."

We do not find that the question of the unanimity of the verdict was covered by any instruction given. We do not think this instruction is couched in such terms as would invite the jury to disagree, although it says nothing about consultation with fellow jurymen in the jury room (which would

have rendered it less objectionable). It is a legal require-
ment that there should be unanimity in the finding of a verdict
of guilty; and defendant is entitled to an instruction as to
this legal requirement. *State* v. *McKinney*, 88 W. Va. 401,
106 S. E. 894; *State* v. *Wisman*, 93 W. Va. 183, 118 S. E.
139. It was error to refuse this instruction.

We do not think it was error to refuse instruction No. 10
asked for by defendant, which relates to the consideration
of circumstantial evidence and the care with which the jury
should consider evidence of a circumstantial character. The
evidence in this case is direct and positive, and we do not
think the instruction was proper.

Nor do we think defendant can complain of the fact that
the court, upon receiving the verdict, announced to defendant
that he would sentence him to confinement in the county jail
for four months and to pay a fine of $100, but afterwards
reduced the punishment to confinement for three months in
jail. What was said by the court can not override the order
containing the judgment and sentence which recites the re-
turn of the verdict, the motion of defendant to set aside the
same on the grounds therein stated, the overruling of the
court thereto; and inquiry by the court of defendant if he had
anything to say why sentence should not be imposed upon
him, and nothing being alleged in delay thereof, the court
proceeded to pronounce the sentence of three months and to
impose a fine of $100 and directed him to be worked on the
county road until the fine and costs were paid. If there
was error in the reduction of the sentence which the court
said he would impose upon the defendant, and the reasons
therefor as contained in the remarks of the court to defendant,
it is error not prejudicial to defendant. It reduced his pro-
posed punishment one month. But as the sentence must be
reversed and a new trial awarded, this assignment is
immaterial.

The assignment of error that the verdict is contrary to
the law and the evidence is not well taken. The evidence is
positive that defendant had in his possession in his home a
quantity of moonshine liquor; on the other hand defendant
and his wife say the liquor was wine made of white grapes
for home consumption and that he did not have in his posses-

sion any quantity of moonshine liquor. The jury was justified under this evidence and the circumstances to find the verdict; indeed, we can not see how they could well find otherwise.

The judgment will be reversed, the verdict set aside, and a new trial awarded.

> *Judgment reversed; verdict set aside; new trial.*