# CHARLESTON,

## STATE *v.* CLAYTON RUTHERFORD

### (No. 5739)

Submitted October 25, 1927.     Decided November 1, 1927.

CRIMINAL LAW—*Verdict Based on Conflicting Evidence Will Not be Set Aside on Appeal, Except for Passion, Prejudice, or Other Improper Motive of Jury.*

The verdict of a jury based upon a conflict between oral evidence and inferences proper to be drawn from circumstances and facts which appear in the case, will not be set aside by this Court, unless there is such a preponderance against the verdict as to indicate that the jury were influenced by passion, prejudice, or some other improper motive. *State* v. *Kees*, 92 W. Va. 277.

(Criminal Law, 17 C. J. §§ 3594, 3595.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Clayton Rutherford was convicted of malicious wounding, and he brings error.

*Affirmed.*

*H. H. Darnall* and *F. W. Riggs*, for plaintiff in error.

*Howard B. Lee*, Attorney General, and *J. Luther Wolfe*, Assistant Attorney General, for the State.

LIVELY, JUDGE:

Convicted of maliciously wounding one Bowen, and sentenced to serve seven years in the penitentiary, defendant

Rutherford obtained this writ of error. The defendant has made no appearance in this Court, and has filed no brief, but the error relied upon in his petition is that the evidence is not sufficient to sustain the verdict. This assignment of error will necessitate the detailing of the evidence somewhat at length.

According to the witnesses for the state, on September 26th, 1925, at about 11:30 P. M., one Bowen and five other companions, William Gorby, Jesse Bird, Charley Bird, Earl Smith and Bryan Skein, were out riding in a five-passenger Nash car driven by Gorby. While passing through Ritter park, Huntington, the car was stopped in order to permit one of its occupants to answer a call of nature. About this time defendant Rutherford, a Huntington police officer, was driven up in a Ford roadster. The officer asked Bowen and his companions what they were doing there and if they had any liquor in the car, and flashed his light in the front and rear of the automobile. They told him that they had no liquor, and explained the reason for their stop in the park. Thereupon the officer ordered them to drive off. They complied with this demand, drove through the park, made a circle, came back near where they had seen defendant, (who was not at that place on their return), continued on through the park and left it by way of Enslow park, and crossed 16th street at the boulevard. Bowen and his companions sensed that some one was following them. They thought probably that it was Rutherford but they were not certain. The driver of their car speeded up, but Bowen becoming frightened at the rapid rate they were making, said to the driver of the car, "slow up Bill; we haven't done nothing. Let him come on." The driver slowed up, and when the car in the rear got within fifty yards, someone in the rear started shooting. Upon the firing of the third shot, Bowen felt a sting in the back part of his hip. He told the driver of his car that he was shot and asked him to stop. The driver complied with his request. Whereupon the Ford roadster in which Rutherford was riding was driven up by his companion, and Rutherford stepped off of the running board with a gun in his hand, and commanded that none of the occupants of the car should

move, or he would shoot them. Bowen explained to him that he had already been shot, and requested to be taken to the hospital. Rutherford then said, ''damn you, I will take you to jail.'' He then ordered all of the occupants of the car to get out. The car in which they were riding had been stopped on an incline, and the driver, who had retained his seat in the car, requested that someone chock the rear wheels. As Charley Bird picked up a stone for this purpose, the lights of the Ford were turned in his direction, and Rutherford shot at him. Bird thereupon ran from the scene of action, and Gorby, the driver, ''stepped on the gas'', and likewise made his escape, amidst a fussilade of bullets fired at him by Rutherford. Bowen, Smith and Skein were taken to police headquarters, and charges of drunkenness and possession of moonshine liquor were placed against them. The injured man was taken in charge by a physician, and his wound probed and dressed. Bowen and his companions stated that they had not been drinking any liquor that night; that there was no liquor in the car; and that they had not thrown out any liquor in the park and that they were not conducting themselves in a loud and boisterous manner. The charges against the three men who had been arrested were later dismissed. Five shots took effect in the automobile occupied by Bowen and his companions. Two were directly in the back part of the car to the right of the center; one glanced off the body at the back; one shot knocked an oil cup off on the left hand side, and one took effect in a front tire. This in substance was the evidence offered on behalf of the state.

The evidence of the defendant and his witnesses is directly in conflict with that of the prosecution. According to the defense witnesses, on the night the shooting took place, one Morgan, a salesman for the National Biscuit Company, came to Huntington to make a report to his company, and while there went to see the defendant Rutherford, who was a regular police officer of the city of Huntington, in regard to the latter's taking charge of a gasoline service station. Morgan was informed that the defendant would be off duty at eleven o'clock that night. When the defendant was relieved from duty he found the former waiting for him in his Ford road-

ster.   Rutherford got in the car and they drove off and stop-
ped at a point in Ritter park near a fountain to get a drink,
where they continued their conversation in regard to the
business proposition mentioned.   About this time, a large car,
the lights of which were turned off, was driven out a short
distance from them and stopped.   The occupants of the car
were making a "racket, and hollowing and carrying on."
Morgan, at defendant's request drove over to the other car,
and upon arriving there defendant Rutherford asked one of
the men outside of the car what they were doing there.   De-
fendant said about that time some one threw a pint bottle
of liquor from the car and stepped on the gas, and got
away; that he took possession of the pint bottle which was
about two-thirds full of whiskey, and that he and his com-
panion went on back to where they were and sat down and
resumed their conversation; that about ten or fifteen minutes
later this same car came back again with the lights turned
off, and was parked in the identical place where it had been
before; that defendant said to Mr. Morgan, "let me under
the wheel I am going to try to catch them fellows;" that he
pulled out in the front of their car, and they must have known
who he was, because they started up and came toward him;
that his car was almost across the road that leads into the
park, facing out; that he waved his flashlight in front of them,
but instead of stopping they speeded up and came toward
him, saying:   "Get out of the way, you brass-button son of
a bitch, or I will run over you;" that when they did that,
he wheeled and started after them; that he chased them up
to the boulevard, turned off on the dirt road and came back
on to Norway Avenue and turned to the right; that he was
about a square behind them; that at the Holderby place
where they turned to the right he knew they would have to
circle back, and so he went just beyond Woodmere cemetery,
turned to his right, went up the hill about a third of a square
and turned back to the right again; that he met them on a
curve and that whoever was driving their car tried to swerve
into him, and he jerked his car out of the road on to the
pavement and came near running over the bank; that he was
almost turned cross-ways of the road; that as he did that his

pistol was lying in the seat in the position in which he always placed it when he was chasing an automobile; that when he swerved the car, Mr. Morgan grabbed the pistol and fired two shots; that the car went forty or fifty feet and stopped; that he was still driving the car and drove up beside the other automobile; that there was no one on the running board of his car; that Mr. Morgan jumped out with defendant's pistol in his hands; that he pulled Morgan's car in front of their machine and came back, and Bowen told him, Rutherford, that he was shot; that he told Morgan to take Bowen to head-quarters in his car and that he, defendant, would take charge of the rest; that as Morgan pulled out in front of the other car, the driver stepped on the gas and ran away; that when the other two shots (the only shots fired by defendant), were fired, "right down at the tire," all of them tried to run; that he got Skein and Smith; that the other car was practically by the side of his machine at the time the first shot was fired; that he had not fired before Bowen said he was shot; that all three of the men who were arrested were drunk; that he had turned over the liquor which had been thrown from the car, to the police sergeant at headquarters; that when Morgan had fired two shots in succession, "before a man could say anything", he had hollowed at him not to shoot any more.  Rutherford stated in answer to the question: Q. "Where were they when the first shot was fired?" A. "When I swerved my car out of the road, cut my car over to the bank, cut back and then turned my car almost cross-ways of the road, their car was practically in front of mine then; that "they had cut back and he shot one shot and when he shot that I put the gas to my car and pulled up behind them and he shot again."

Morgan corroborates the defendant in most all of the state-ments made by him, and admitted that he had picked up the revolver and fired two shots.  He stated that when Rutherford had turned the car to one side as previously described and had hollowed for Morgan to look out, the witness picked up the revolver and fired the two shots quickly; that the reason he fired was because he thought they were in immediate dan-ger of being knocked over the bank; that he did not know

whether either of the shots took effect or not; that the two
shots fired by him were the first fired; that the car was ap-
proaching close on them at the time, almost at the point of
collision he thought; that the men who were arrested that
night were very drunk; that Rutherford was driving at the
time he, Morgan, fired the two shots.   On cross-examination
the witness testified that there was about to be a collision;
that Rutherford turned the car quickly and told him to look
out, and that he shot over the side of the car while they were
at close quarters coming towards him; that the second shot
was fired as the other car turned; that they were leaving him
and Rutherford when the second shot was fired; that he re-
tained possession of the pistol and gave it to Rutherford
after he had arrested the men; that the witness had fired two
shots and heard two shots fired as he was leaving with Bowen
for headquarters; that there had been no shooting until he
and Rutherford met Bowen and his companions on the turn.

Sherman Hood, a witness for the defendant, testified that
he was in Ritter park the night of the shooting and had
stopped not far from the Bowen car, because he had run out
of gasoline; that as Rutherford approached the Bowen car
he heard the men cursing; that he did not see the big car
come back after they had left.

A number of police officers who were present at headquar-
ters the night Smith, Bowen and Skein were brought in, tes-
tified that the prisoners were very drunk.   The further fact
was brought out that two of the occupants of the Bowen car,
Smith and Skein, had been convicted of violating the prohi-
bition law; also that Skein had said on the night of his arrest
that if a charge for possession of the moonshine liquor, alleged
to have been thrown out of the car, was to be placed against
him and Smith, that he would assume the responsibility,
although he did not have any liquor that night.

The irreconcilable conflict in the evidence becomes apparent
from a mere detailing of the salient facts.   Bowen was
wounded by the third shot.   Morgan says he fired but two
shots, and they were the only ones fired from the car.   Who
shot Bowen if Morgan did not?   As there was evidence from
which the jury was warranted in finding the accused guilty

as charged, we are not disposed to disturb the verdict. If the question of guilt depends upon the weight of testimony or inferences or deductions from the facts proven, the jury, and not the court, are exclusively the judges. *State* v. *Cooper*, 26 W. Va. 338. And a verdict of a jury "based upon a conflict between oral evidence and inferences proper to be drawn from circumstances and facts which appear in the case, will not be set aside by this Court, unless there is such a preponderance against the verdict as to indicate that the jury were influenced by passion, prejudice, or some other improper motive." *State* v. *Kees*, 92 W. Va. 277; *State* v. *Burner*, 94 W. Va. 634.

The judgment of the lower court will be affirmed.

*Affirmed.*