[Civ. No. 1410.   Third Appellate District.—December 27, 1915.]

HENRIETTE SCHEELINE et al. (a Copartnership), Respondents, v. S. A. PEZZOLA et al., Appellants.

SALE OF INTOXICATING LIQUORS—RECOVERY OF PRICE—CONSPIRACY TO OBTAIN LICENSE—VOID CONTRACT.—A wholesale liquor firm engaged in the business of selling intoxicating liquors which participates in a conspiracy to circumvent the provision of a county ordinance which prohibits any person engaging in the saloon business in the county who was not a citizen of the United States, cannot legally enforce the payment of sales of liquors made by it to the persons to whom a license for the conducting of such business was thus illegally issued.

ID.—CONTRACTS—LAWFUL PURPOSE ESSENTIAL.—A contract must have a lawful purpose, and transactions in violation of law cannot be made the foundation of a valid contract.

ID.—ILLEGAL SALE OF LIQUORS—VOID CONTRACT.—Where the illegal sale of liquor enters into any contract as an inseparable part of its consideration, or the terms or conditions of the contract are inseparably connected with the illicit traffic in liquors, it is against public policy and immoral, and therefore void.

APPEAL from a judgment of the Superior Court of Plumas County.   J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

L. N. Peter, for Appellants.

H. B. Wolfe, for Respondents.

BURNETT, J.—The appeal is from a judgment for $1,023.25 and costs.

The following statement made by appellants is not disputed and seems to be substantially accurate: Respondents are a wholesale liquor firm engaged in the business of selling intoxicating liquors; they made certain sales of such liquors to appellants to be used by the latter in conducting a saloon in Plumas County. When the orders were placed with respondents for the delivery of the liquors, there was an ordinance in said county prohibiting any person from engaging in the saloon business without a license, and no person could obtain a license who was not a citizen of the United States. Appellant A. Pezzola was not such citizen. The facts were known to respondents. Respondent Edwin S. Scheeline had an understanding with appellant S. A. Pezzola, whereby the latter was to make application to the board of supervisors of said county for a liquor license in his own name and conduct the business for appellant A. Pezzola, and it was understood that in case said license was issued the liquor was to be supplied to A. Pezzola or to both appellants. S. A. Pezzola made the application, the license was issued to him, and thereafter respondents furnished liquors, charging the sales on their books to both of the appellants, but all bills were made out against S. A. Pezzola. Said Edwin S. Scheeline testified that he understood "at the time that A. Pezzola, Steve Pezzola's father, was not a citizen of the United States and not entitled to engage in the liquor business under the ordinance of Plumas County, that S. A. Pezzola was running the business for his parents in his own name, they were unable to get a license."

Appellants contended that it thus appeared that there was a conspiracy, participated in by respondents, to violate or circumvent the law, and therefore that respondents were wrongdoers and would not be aided in a court of justice to reap any advantage from their unlawful contract, and appellants sought still further to develop the situation, as is shown

by the following quotation from the transcript: "Q. You understood it was in violation of the liquor ordinance of this county at that time? Mr. Wolfe: Objected to as irrelevant, immaterial, and incompetent. The Court: Sustained. Mr. Peter: Will your Honor hear me on that? The Court: I can't see how it is material. Mr. Peter: I want to develop that there was a conspiracy here to violate the law and this plaintiff was a party to it, and they cannot take advantage of their own wrong and the court will leave them where they left themselves. The Court: I don't think there is anything in that; I will hear the evidence." His answer was: "All I understood that they were violating the order was the fact if A. Pezzola should have the license, he couldn't have a license; they got the license for him." Afterward the court sustained an objection to this question: "You understood that under the law, under the liquor ordinance of this county and laws of the state you had no right, no one had a right to engage in the liquor business without a license, did you?" Counsel for appellants then stated that he offered to prove by the witness "that at the time he made the first sale testified to by him that he knew and understood that all the business, that the business, which was thereafter to be conducted in the name of S. A. Pezzola was for himself and A. Pezzola; that A. Pezzola was not permitted to engage in the business, to hold a license under the liquor ordinance of Plumas County, because he was not a citizen of the United States . . . and that he knew the fact of A. Pezzola engaging in the business was a violation of the ordinance." The court, however, held it to be immaterial. In this we feel satisfied the court was in error.

The law is well settled as to matters of this character and is aptly set forth in many quotations made by appellants from various authorities. The Penal Code of this state, in section 435, provides that "Every person who commences or carries on any business, trade, profession or calling for the transaction or carrying on of which a license is required by any law of this state, without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor," and that any contract having for its object the violation of the law is against public policy is expressly provided in section 1668 of the Civil Code.

The decisions are collated in 6 R. C. L., page 692, et seq., and we may content ourselves with quoting section 98 as fol-

lows: "At no time in the history of the common law were contracts in violation of law regarded as valid. Individuals were never allowed to stipulate for iniquity. A contract, though it may be based on consent, derives its obligatory force from the sanction of the law. It would therefore be anomalous indeed if the law were to sanction contracts which violate the law. The law, which prohibits the end, will not lend its aid in promoting the means designed to carry it into effect. It will not promote in one form that which it declares wrong in another. The whole doctrine relating to illegal contracts is founded on a regard for the public welfare. In fact, it has been asserted that the maintenance of this doctrine is essential to the preservation of the state. It may therefore be said to be a fundamental principle of the law of contracts that a contract must have a lawful purpose and that transactions in violation of law cannot be made the foundation of a valid contract."

As to the particular fraudulent contract before us it is sufficient to quote from Cyc. as follows: "Where a license or certificate is required by statute as a requisite to one practicing a particular profession, an agreement of a professional character without such license or certificate is illegal and void. . . . The same is held where a license is required for the carrying on of a particular trade or business, as in the case of a wholesale or retail liquor dealer. . . . In such instances agreements made without the requisite license are generally held to be void." (9 Cyc. 478.)

"Where the illegal sale of liquor enters into any contract as an inseparable part of its consideration, or the terms or conditions of the contract are inseparably connected with the illicit traffic in liquors, it is against public policy and immoral and therefore void." (23 Cyc. 334.)

The showing made was sufficient to bring the case within the purview of the foregoing principle. It appears with reasonable certainty that plaintiff conspired with defendant S. A. Pezzola to circumvent the said ordinance, and, therefore, the law will not aid in the collection of the claim. Besides, appellants sought unavailingly to make more apparent the invalidity of the contract.

The judgment is therefore reversed.

Chipman, P. J., and Hart, J., concurred.