## CHARLESTON.

DORR v. CHESAPEAKE & OHIO RAILWAY CO. *et al.*

Submitted April 4, 1916.   Decided April 11, 1916.

1. RAILROADS—*Specific Performance—Nature of Contract—Legality.*
    When an owner, who grants a railroad right of way through his lands for a valuable consideration expressed in the deed, and a carrier engaged in interstate commerce orally agree that, as part of the consideration, not so expressed, it will issue to him annually for · life a pass over its road, and the agreement therefor, though valid at the time, is prohibited by a subsequent act of Congress, entitled "an act to regulate commerce," passed June 29, 1906, under the power conferred by the Constitution, the carrier's failure or refusal to issue the pass because so prohibited will not entitle the grantor to a decree for specific performance of the oral agreement

· or for rescission of the grant, neither the agreement nor the grant providing for either remedy in the event of such failure or refusal. (p. 152).

2. SAME—*Grounds—Performance of Contract.*

Equity will not cancel a deed for a railroad right of way, made upon a valuable consideration expressed therein, when the sole cause alleged for the cancellation is the failure or refusal of a carrier engaged in interstate commerce to issue annual passes for life as additional consideration pursuant to an oral agreement not expressed in the grant nor otherwise recognized as a ground of forfeiture of the right conveyed, where compliance with the agreement, although not originally violative of any rule of law or statutory regulation, has thereafter been prohibited by the act of Congress passed June 29, 1906, entitled "an act to regulate commerce," and the carrier has accepted the conveyance by the construction and operation of its road upon the way so granted to it. (p. 156).

3. CARRIERS—*Regulations—Interstate Commerce Act—Charges.*

Since the passage of that act, such a carrier can not lawfully charge, collect or receive anything except money for personal transportation over its road, or therefor or for any service in connection therewith demand, collect or receive a greater or less or different compensation than that specified in its published schedule of rates. (p. 153).

Appeal from Circuit Court, Pocahontas County.

Suit by C. P. Dorr against the Chesapeake & Ohio Railway Company. Decree for plaintiff, and defendant appeals.

*Reversed, and bills dismissed.*

*Enslow, Fitzpatrick & Baker,* for appellant.

*Price & McNeel,* for appellee.

LYNCH, JUDGE:

By an original bill plaintiff prayed specific performance of an alleged contract for an annual pass over an interstate railway during his life, in consideration of the grant of an easement in fee for a right of way over lands owned by him in Pocahontas County. By two amended bills, containing substantially the same averments, though with some slight additions, he prayed in the alternative for either specific performance or cancellation of the grant. The lower court denied

specific performance, but cancelled the deed and thereby restored the parties to their original status.

The facts upon which the relief is predicated are these. The Greenbrier Railway Company, a subsidiary corporation sponsored and promoted by the Chesapeake & Ohio Railway Company, had instituted proceedings under chapter 42 of the Code to condemn a right of way through the lands of the plaintiff. The commission appointed to assess the damages performed that duty and filed their report, to which Dorr excepted and demanded a trial by jury, as permitted by that chapter. The company paid into court the amount so assessed and took possession of the property. On July 4, 1900, Dorr and H. C. Simms, of the firm of Simms & Enslow, the legal advisers of the Chesapeake & Ohio Railway Company, Simms being also president of the Greenbrier Railway Company, entered into the contract sought to be enforced, according to the averments of the several bills, and by deed bearing the same date, subsequently executed, Dorr granted to the Greenbrier Railway Company the right of way in fee through his lands. Subsequently the money paid into court was restored to the company, and the condemnation proceedings were dismissed. Thereafter the railway company proceeded to construct its road upon, and has since continued to use and occupy for its corporate purposes, the land granted.

The consideration for the grant, so far as appears on its face, was one dollar in hand paid, and a covenant of the grantee, described as running with the land, to construct and maintain suitable cattle guards and farm crossings for the use of the land across which the right of way extended, and to erect and maintain along the western boundary of the way a good and substantial stock farm fence. The deed did not refer to any agreement for the issuance of an annual pass. If made, it was oral.

To each of the several bills defendants demurred, the Greenbrier Railway Company being first introduced as a party defendant in the second amended bill. They insist the demurrer should have been sustained, on the ground that the relief prayed in the original bill, being for specific performance, and that in the amended bills, being for specific performance or

cancellation, were inconsistent. That objection, however, is not tenable. It is not error to pray for relief in the alternative; and the court may grant either one, if warranted by the allegations and proof. *Korne* v. *Korne,* 30 W. Va. 1; *Guano Co.* v. *Heatherly,* 38 W. Va. 409; *Blowpipe Co.* v. *Spencer,* 40 W. Va. 698; *Baker* v. *Berry,* 109 Va. 776.

Defendants by their answers admit the deed for the right of way was obtained and executed as averred by plaintiff. But they deny that Simms entered into an agreement with Dorr for annual passes as part of the consideration for the grant, and say if he entered into an agreement to that effect he did so without the knowledge or authority of the Chesapeake & Ohio Railway Company, and further, that if it was made and was then valid and binding on the company it became invalid and unenforcible in virtue of the act of congress, entitled "an act to regulate commerce," passed June 29, 1906, effective January 1, 1907. That act they plead as an exemption against the enforcibility of the contract as one for free transportation.

The first section of that act provides that "no common carrier subject to the provisions of this act shall, after January 1, 1907, directly or indirectly issue or give any interstate free ticket, free pass or free transportation for passage, except to certain specific persons, plaintiff not being within any of the excepted classes. Section 6 thereof says: "No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property as defined in this act, unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any services in connection therewith, between the points named in such tariffs, than the rates, fares and charges which are specified in the tariffs filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares and charges so specified, nor extend to any shipper or persons any privileges or facilities in the transportation of

passengers or property except such as are specified in such tariffs.'' The act further made its provisions applicable to ''any common carrier or carriers engaged in the transportation of passengers or property by railroad from one state or territory of the United States'' to another; or, in other words, to any interstate carrier, the Chesapeake & Ohio Railway Company being a carrier engaged in interstate traffic. It also provides that any common carrier directly or indirectly violating any of the provisions forbidding the issuance of a free pass shall pay the United States a penalty of not less than one hundred nor more than two thousand dollars, and that any person other than those of the excepted classes who uses any free ticket or pass shall be subject to a like penalty. Hence, if defendants or either of them should be required to perform the alleged agreement with Dorr, and he should accept such a pass, the resultant effect necessarily would be that both he and the carrier would be amenable to the penalties prescribed by the act of Congress.

Equity will not lend its aid to the enforcement of an agreement the result of which would be a violation of any act of Congress within the scope of its constitutional authority under the power to regulate interstate commerce and applicable to railway carriers, although the agreement sought to be enforced may have been valid and binding at the time Dorr and Simms entered into it.

And, although apparently a citizen is protected in his right to contract, by the general constitutional provision that Congress shall not pass any act impairing the obligation of an agreement when lawfully made, that clause must be considered and construed in connection with the further provision granting the exclusive right to regulate interstate commerce, in respect of which it must be assumed that Congress, in the exercise of that power, could lawfully pass any act regulating commerce the effect of which would be, as was the effect of the act of June 29, 1906, to impair or render invalid, though valid at its inception, any contract it deemed an unfair or unreasonable restriction or infringement upon or a discrimination against the rights of others also engaged in interstate commerce.

In *Railroad Co.* v. *Mottley,* 219 U. S. 467, the Supreme

Court of the United States held that the constitutional liberty of the citizen to contract was not infringed by Congress when in the exercise of its power over commerce it passed the act of June 29, 1906; section 6 of which, as construed by the court, rendered unenforcible a prior valid contract whereby an interstate carrier agreed to issue annual passes for life in consideration of a release of a claim for damages for injuries chargeable to the carrier's negligence. The facts of that case and this one differ only as regards the subject matter of the agreement, one relating to compensation for injuries negligently inflicted, the other to compensation for a right of way. That distinction, however, is not important or material.

In *Addystone Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 229, it was expressly held that under its power to regulate commerce congress ''may enact such legislation as shall declare void and prohibit the performance of any contract between individuals or corporations where the natural and direct result of such contract will be, when carried out, to directly and not as a mere incident to other and innocent purposes, regulate to any substantial extent interstate commerce. Also in *Scranton* v. *Wheeler,* 179 U. S. 141, where the plaintiff, a riparian owner, sought compensation from the government for injuries caused by building a pier in the river which obstructed his access to a navigable stream, the court said: ''The riparian owner acquired the right of access to navigability, subject to the contingency that such right might become valueless in consequence of the erection under competent authority of structures on the submerged lands in front of his property for the purpose of improving navigation. When erecting the pier in question, the government had no object in view except in the interest of the public to improve navigation. It was not designed arbitrarily or capriciously to destroy rights belonging to any riparian owner. What was done was manifestly necessary to meet the demands of international and interstate commerce.'' So it has been held that, where a bridge has been constructed over a navigable stream under authority given by a state, congress, when the necessities of interstate commerce require and the bridge becomes an

unreasonable obstruction to free and open navigation, may authorize proceedings to require the bridge company at its own cost to make certain changes and alterations in the structures so as to permit the passage of vessels engaged in the transportation of interstate commodities. *Union Bridge Co. v. United States,* 204 U. S. 364, 400. The court said: "It must be taken for granted, under the cases cited and upon principle, not only that the company when exercising the power conferred upon it by the state did so with the knowledge of the paramount authority of congress to regulate commerce among the states, but that it erected the bridge subject to the possibility that congress might at some future time when the public interest demanded exert its power by appropriate legislation to protect navigation against unreasonable obstruction." And in the *Legal Tender Cases,* 12 Wall. 550, the court said, what is pertinent here: "As in a state of civil society property of a citizen or subject is ownership subject to the lawful demands of the sovereign, so contracts must be understood as made in reference to the possible exercise of the rightful authority of the government; and no obligation of a contract can extend to the defeat of legitimate governmental authority."

And so it must be said that, conceding its validity and binding force and effect, the contract for passes necessarily was subject to the exercise by congress of the power vested in it by the Constitution to enact any legislation by it deemed essential to regulate or protect commerce between the states of the Union, although thereby the contract was impaired and rendered unenforcible because thereafter illegal. Such, indeed was the effect of the act of June 29, 1906, if not its plain intendment; because, as construed in the Mottley case, the carrier can not lawfully charge, collect or receive anything but money for the transportation of persons or property, and if it does so it and the person who accepts transportation without payment therefor in anything except money are alike amenable to the penalties prescribed by the act.

The remaining inquiry then is whether the decree was right in ordering a cancellation of the deed granting the easement over plaintiff's lands. That instrument, as we have observed,

made no provision for the issuance of annual passes, and did not recognize the existence of any independent oral contract therefor. The absence of such provision, however, would not prevent plaintiff from showing the real consideration for. the grant. *Lambert* v. *Lambert,* 66 W. Va. 520; *Wilfong* v. *Johnson,* 41 W. Va. 283; *Rymer* v. *Oil Co.,* 54 W. Va. 530, 537; *Straus* v. *Bodeker,* 86 Va. 543; *Graybill* v. *Brugh,* 89 Va. 895. But, as the grant did show it was executed upon a valuable consideration, we fail to perceive any valid basis for a decree of cancellation or rescission.

Surely, an illegal contract, or a contract which by reason of subsequent illegality has become unenforcible, can not be assigned as a reason for such a decree. "An illegal contract is as a rule void—not merely voidable—and can be the basis of no judicial proceeding. No action can be maintained upon it, either at law or in equity. This impossibility of enforcement exists whether the grant is illegal in its inception or whether, being valid when made, the illegality has been created by subsequent statute." Pomeroy on Contracts (2d Ed.) section 280. The same author further says in the section cited: "If a contract is tainted with the vice of illegality, it is held to create no obligation, not from any consideration of the individual rights of the parties, who may be equally in fault, but from regard for the public." Generally, the illegality of a contract is a perfect defense to its enforcement, because the law will not require one to do, or punish him for not doing, that which it forbids him to do. Parsons on Contracts, vol. 2, p. 674; *Railroad Co.* v. *Mottley, supra,* expressly holding that after the act of June 29, 1906, it was unlawful for a carrier to issue free annual passes for interstate transportation in pursuance of a prior existing contract to do so, and, even though valid when made, such a contract could not thereafter be enforced against the carrier by suit. So in *Atkinson* v. *Ritchies,* 10 East 535, Lord Ellenborough said: "That no contract can be carried into effect which was originally made contrary to the provisions of law, or which, being made consistently with the rules of law at the time, has become illegal in virtue of some subsequent law, are propositions which. admit of no doubt."

Equity will not rescind a contract for real estate, carried into grant, upon a valuable consideration expressed therein, merely because of the failure of the grantee to comply with an oral agreement not expressed therein and sought to be made a condition subsequent, especially where the grantor accepted the verbal promise of the grantee to do certain other things without any agreement or understanding that the failure to do the promised acts should be a condition subsequent or in anywise affect the validity of the deed or entitle him to a reconveyance of the title. 4 R. C. L. 500. And relief by cancellation was denied where deed conveyed real estate for burial purposes, upon consideration that the grantee would fence, use and maintain the ground for that purpose, when a subsequent act of the Legislature had forbidden such use. *Schoville* v. *McMahon,* 62 Conn. 378. Though upon different facts, the same rule was declared in *Lawrence* v. *Gayetty,* 78 Cal. 126; *Rheingans* v. *Smith,* 161 Cal. 362; *McGraw* v. *Kennedy,* 65 W. Va. 595, 600. An estate once vested can not be defeated by a condition subsequent the performance of which has become illegal because prohibited by a valid act of Congress regulating interstate commerce. *Ricketts* v. *Railway Co.,* 91 Ky. 221. In 4 Ruling Case Law 500, the rule stated in general terms is: ''Mere failure of consideration, whether partial or total, when unmingled with fraud or *mala fides,* is not sufficient to obtain the rescission of an executed agreement, if the instrument contains a recital that it is made upon a valuable consideration.'' See also 2 Devlin on Deeds, section 961; *Stacy* v. *Walker,* 125 Ala. 291. The grantee takes an absolute estate under a grant upon a condition subsequent where the condition, though valid at the time, becomes impossible of performance because violative of a valid law subsequently enacted. *Taylor* v. *Sutton,* 15 Ga. 103.

It seems obvious, then, that, as plaintiff is not entitled to either form of the relief prayed, the decree must be reversed and the bills dismissed; and such will be our decree.

*Reversed, and bills dismissed.*