# CHARLESTON.

THREE STAR FOOD PRODUCTS CORPORATION *v.* SIMON OFSA.

Submitted October 23, 1923.   Decided October 30, 1923.

1. SALES—*Purchase Price of Substance for Unlawful Manufacture of Intoxicating Liquor can not be Recovered.*

   The sale of a preparation or substance designed or intended to be used in the unlawful manufacture of intoxicating liquor, being violative of the federal prohibition statute, (Serial section 8351q, 1922 cum. sup. Barnes' Federal Code), the purchase price for such preparation or substance can not be recovered in a court of this state.   (p. 638).

2. SAME—*Error to Direct Verdict for Plaintiff in Action to Recover for Sale of Substance for Unlawful Manufacture of Intoxicating Liquor.*

   If upon the trial of the action to recover such purchase price, the evidence be sufficient to reasonably warrant the jury in finding that the substance was sold in violation of the federal statute, it is error to direct a verdict in plaintiff's favor.   (p. 643).

Error to Circuit Court, McDowell County.

Action by the Three Star Food Products Corporation against Simon Ofsa.   From a judgment for plaintiff, defendant brings error.

*Reversed and remanded.*

*Harman & Harman* and *R. Brown Zinn,* for plaintiff in error.

*Pratlow & Christie,* for defendant in error.

MEREDITH, JUDGE:

Defendant, Ofsa, seeks to reverse the judgment of the circuit court of McDowell County, rendered against him in a proceeding by notice of motion for the recovery of the price of a quantity of malt extract and hops sold to defendant by plaintiff.   The circuit court directed the jury to return a verdict for plaintiff for the amount sued for, $343.00, and judgment was entered thereon.

The facts are largely undisputed.   Defendant is the owner of a grocery and meat shop in the town of Keystone.   Plain-

tiff, a Baltimore concern, is the manufacturer and dispenser of a preparation called "Non-Such" Malt Extract, to be used by consumers in making a malt beverage. In September, 1921, a salesman of plantiff took defendant's order for 25 cases of the extract, 25 dozen packages of hops, and a case of crowns. The crowns were to be used in capping the bottles in which it was contemplated that the users would preserve the beverage. Defendant was to sell the malt extract and the hops to purchasers, who, by adding water thereto in certain proportions, could manufacture the drink in their own homes. Plaintiff also furnished a quantity of printed directions which were to be distributed to the purchasers of the extract. These directions are interesting and important documents in this case. They are entitled: "Directions for making Temperance Beverage."

They state that the preparation of the Temperance Beverage consists of but three simple operations, and that no special apparatus is required except a boiling pot and a six gallon stone crock. The three operations are described in detail. For our purpose, they can be considered as one. The malt extract, hops and sugar are to be mixed in certain proportions, boiled in water and strained into the stone crock. To this mixture 15 gallons of water are to be added, and the whole allowed to cool. Later, yeast is dissolved in the mixture, and after fermentation the beverage is bottled, and sealed with the crowns provided.

To these directions was added the following "Caution":

> "Be sure to comply with the National Prohibition Laws, and do not use less than 20 gallons of water in making this beverage, as using a small quantity of water will create a greater percentage of alcohol, and thereby you will violate the prohibition laws."

Defendant testified that he inquired of the salesman as to his legal right to handle the extract when the sale was solicited; that the salesman assured him that he had nothing to fear on that score; and that the company would back the defendant in case any trouble of that kind should arise. Plaintiff's treasurer denies that the salesman had authority to make any such engagement for the company, but, as to

the legal character of the extract, he testifies that their product is advertised and distributed throughout the country, that it is widely used as a sweetening syrup in the manufacture of candy and in baking, as well as in the Temperance Beverage, and that he never before this action knew of its being confiscated as being in violation of the prohibition law. That is just what occurred in defendant's case, however. He had displayed the preparation in his show window but a few days, when a federal officer arrested him, seized his stock of extract and hops, and reported him to the federal district attorney. Upon the latter officer being satisfied of defendant's innocent intentions in the matter, the criminal charges against defendant were ultimately withdrawn. However, these circumstances were not sufficient explanation to plaintiff to satisfy its claim for the purchase price of the order; therefore this action.

The evidence recited makes clear the theory of the defense. Defendant's position is that as the contract with plaintiff involved the sale of goods, forbidden by the prohibition laws of the state and nation, it was therefore illegal and unenforceable. Plaintiff, on the other hand, conceding that an illegal contract would be unenforceable, urges that while it is undisputed that the commodity sold could be used for the preparation of an intoxicating beverage, it was intended and designed to be used for no such purpose; and that it is incumbent upon the court to impute proper and legal motives to the parties to the transaction.

The circuit court seems to have been persuaded that the principle urged by plaintiff was so controlling on the facts presented, and that there was such slight evidence—if in fact any at all—of violation of or intent to violate existing law, that it held the contract of sale to be a legal and binding obligation on the defendant, and directed the verdict to be found.

To ascertain whether this finding be correct, we must consider the sections of the prohibition statutes involved in the issue of fact presented.

Serial section 8351q, cum. sup. 1922, Barnes' Federal Code (Act Oct. 28, 1919, ch. 85, Title II, §18) reads:

> "It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction, recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

No section of our state prohibition law in effect when the sale in question was made so nearly describes the offense of which it is argued the plaintiff was guilty, as the provision quoted above. However, serial section 8352, cum. sup. 1922, Barnes' Federal Code, making it unlawful to have or possess "any liquor or property designed for the manufacture of liquor," would less specifically cover the offense chargeable to the parties.

Concede for the moment, however, that the plaintiff, by its sale of the extract and hops was guilty of the offense created by the federal statute above quoted, and concede also the general principle that a contract having for its object the commission of an illegal act is unenforceable, is the matter then concluded? The point that suggests itself to us, and it has not been argued in the briefs, is whether or not a contract having for its object the violation of a federal statute, be, as a consequence of such violation, unenforceable in the state courts. Counsel seem content with the mere statement that an illegal sale would fasten no obligations on the parties, and cite no authorities directly bearing on the subject involved.

By a special plea filed in that behalf, defendant has distinctly directed judicial notice to the federal statutes to which we have referred, and the only issue is as to what effect they have relative to the action on the contract in this action.

We are familiar with the often stated principle that public policy forbids the enforcement of obligations which are violative of penal statutes. We are also familiar with some of the decisions announcing what circumstances shall be considered in ascertaining what such public policy is. Some of them would limit such ascertainment to the latest expressions of the legislature and the courts of the particular state; others would open the way to more extensive investi-

gation; but all agree that public policy is in most instances a nebulous and unsatisfactory basis for judicial decision. We prefer, therefore, to determine what force or comity our own and other courts have given to national legislation in cases of this general character.

A somewhat similar case in principle is *Dorr* v. *Chesapeake & Ohio Ry. Co.,* 78 W. Va. 150, 88 S. E. 666, L. R. A. 1916-E, 622. It was a suit in equity to enforce defendant's agreement to furnish plaintiff an annual pass, part of the consideration for a right of way conveyance. This agreement was entered into in 1900. In 1906 Congress enacted a statute forbidding the issuance of such passes, and fixed a penalty for the violation thereof. The same defense was interposed as in this case, that the contract was by act of Congress illegal and therefore unenforceable. The court, in sustaining this position, said:

> "Generally, the illegality of a contract is a perfect defense to its enforcement, because the law will not require one to do, or punish him for not doing, that which it forbids him to do."

Cases similar in their facts to *Dorr* v. *Chesapeake & Ohio Ry. Co.,* supra, and announcing the same principles are *Cowley* v. *Northern Pacific Ry. Co.,* 68 Wash. 558, 123 Pac. 998, 41 L. R. A. (N. S.) 559; and *Louisville & Nashville Ry. Co.* v. *Mottley,* 219 U. S. 467, 55 L. ed. 297, 31 Sup. Ct. 265, 34 L. R. A. (N. S.) 671. The case is also cited with approval in *Bell* v. *Traction Co.,* 83 W. Va. 640, 98 S. E. 885.

In the case of *Tandy* v. *Elmore-Cooper Livestock Co.,* 113 Mo. App. 409, 87 S. W. 614, plaintiff sued to recover certain expenses incurred in the pasturage of defendant's cattle, including as one item, the services of cow-boys. In defense it was shown that plaintiff had pastured the cattle on a ranch of 240 sections of the public domain, which he had enclosed with a fence. The enclosure of more than 160 acres of the public domain was, by act of Congress, a misdemeanor, and it was held that this circumstance rendered the contract between the parties illegal and unenforceable in the state courts.

Still another case is that of *Southern Railway Co.* v. *Wilcox,* 99 Va. 394, 39 S. E. 144. The plaintiff contended that the

railway company contracted to transport phosphate at $3.37 per ton. The price actually charged was $3.61 per ton, which was the published rate under the Interstate Commerce Act, and plaintiff sued to recover damages to cover the difference. The court held that: "The general rule that a contract made in violation of law is void, and that no recovery can be had upon it, applies to contracts made in violation of the Interstate Commerce Act. At page 409 of the Virginia report several cases are cited sustaining this view.

Though not on all fours with the case at bar, the cases cited are persuasive of this principle: "A state court gives the statute of the United States the same recognition, force and effect accorded to acts passed by the state legislative body." II Elliott, Contracts, § 687. Consideration of the structure and true relations of the Federal and State governments reveals clearly that this is true, and it has been no where more ably discussed than by Mr. Justice Bradley in the case of *Claflin* v. *Houseman, Assignee,* 93 U. S. 130, 23 L. ed. 833. There it was held that under the Bankruptcy Act of March 2, 1867, the assignee might sue in a state court to recover the assets of the bankrupt, no exclusive jurisdiction having been given to the courts of the United States. In the opinion the learned judge says:

> "The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction, paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place and persons, though distinct as to subject matter. Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under State laws, may be prosecuted in the State courts, and also, if the parties reside in different States, in the Federal

Courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States Courts, or in the State courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it see fit, give to the Federal courts exclusive jurisdiction. See remarks of Mr. Justice Field, in The Moses Taylor, 4 Wall. 429, and Story J., in *Martin* v. *Hunter's Lessee,* 1 Wheat. 334; and of Mr. Justice Swayne, in *Ex parte McNeil,* 13 Wall. 236. This jurisdiction is sometimes exclusive by express enactment and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court. The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not. foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on erroneous views of the nature and relations of the State and Federal governments. It is often the cause or the consequence of an unjustifiable jealousy of the United States government, which has been the occasion of disastrous evils' to the country.

It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of *Ableman* v. *Booth,* 21 How. 506; and hence the State Courts have no power to revise the action of the Federal courts, nor the Federal the State, except where the Federal Constitution or laws are involved. But this is no reason why the State courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.''

Much of the foregoing language was quoted and approved by Mr. Justice Van Devanter in the more recent case of *Mondou* v. *New York etc. R. R. Co.*, 223 U. S. 57, 38 L. R. A. (N. S.) 44, 56 L. ed. 349, 32 Sup. Ct. 169, 1 N. C. C. A. 890.

As affects the rights of individuals in their contractual relationships, all statutes, in force in the jurisdiction, whether they be of the State or Nation, are to be considered. In an abundance of caution, we think it not improper to remark that the same principles are not necessarily applicable to criminal prosecutions under the separate sovereignties.

The foregoing warrants the conclusion that if the sale of the malt extract and hops was, as alleged, a sale of a preparation or substance, designed or intended for use in the unlawful manufacture of intoxicating liquor, then the contract would be unenforceable in the courts of this state.

If we are correct in our assumption that the circuit court directed the verdict in this case on the ground that there was no evidence sufficient to warrant the conclusion that the sale was for an unlawful purpose; we think it was clearly in error. Without again reciting the evidence, we think it apparent that the question whether or not the substance sold was designed or intended for the unlawful purpose alleged, could only have been properly decided by a jury. It should try the facts and draw the inferences, *State* v. *Austin*, 93 W. Va. 704, 117 S. E. 607; *State* v. *Kees*, 92 W. Va. 277, 114 S. E. 617; and it would be fully warranted in inferring that the "Caution" included in the directions was an invitation to violate the laws it ostensibly so carefully protected.

We reverse the case and remand it for a new trial.

*Reversed and remanded.*