# CHARLESTON.

WHITAKER GLESSNER COMPANY *v.* THE WHEELING TERMINAL RAILWAY COMPANY *et al.*

(C. C. 340)

Submitted April 14, 1925.   Decided April 21, 1925.

1.   CARRIERS—*After Filing Acceptable Tariffs with Interstate Commerce Commission and Public Service Commission, Contract by Railroad Company to Haul Away Wastage from Mill as Consideration for Deed Cannot be Specifically Enforced.*

Where a railroad company has filed with the Interstate Commerce Commission and with the Public Service Commission of this State acceptable tariffs in proper form, duly published as required by the Act of Congress regulating interstate commerce and the public service commission act of this State, respectively, regulating charges for hauling slag, cinders, ashes and wastage from iron and steel mills located on its railway, a contract between an iron mill owner and the railroad company executed before the passage of said acts, by which the latter agreed to haul away the wastage from the mill at its own expense in part consideration of a deed to a right of way for its track over the land of the former, cannot be specifically enforced.   (p. 39).

(Carriers, 10 C. J. § 670).

2. SAME—*No Recovery Can be Had for Consequential Damages for Failure to Perform Contract to Haul Away Wastage from Iron Mills, After Filing Schedule of Rates with Interstate Commerce Commission and Public Service Commission.*

Nor can the mill owner recover consequential damages which may result because of the failure of the railroad company to perform the contract since the passage of said acts. (p. 42).

(Carriers, 10 C. J. § 670).

3. SAME—*Railroad Cannot Receive Compensation for Hauling Wastage from Mill, Except According to Schedules Filed with Interstate Commerce Commission and Public Service Commission.*

The haulage of a railroad company operating in this State of such slag, cinders, ashes, wastage and the like is the service of a common carrier and the tariffs and charges therefor fall within the provisions of the act of congress to regulate commerce, if the service be interstate; or within the provisions of the public service commission act of this State if the service be intrastate. And no compensation can be received by the carrier for such service other than that stated in its tariffs filed and published.    (p. 42).

(Carriers, 10 C. J. § 670).

NOTE:  Parenthetical references by Editors, C. J.—Cyc.  Not part of syllabi.

Case certified from Circuit Court, Ohio County.

Suit by the Whitaker Glessner Company against the Wheeling Terminal Railway Company and others. After sustaining demurrers to the amended and supplemental bill, the trial court certified its ruling.

*Affirmed.*

*G. R. E. Gilchrist,* for plaintiff.
*Nesbitt, Goodwin & Nesbitt,* for defendants.

LIVELY, PRESIDENT.

The trial court sustained demurrers to the amended and supplemental bill, and, upon joint application of the parties, certified its ruling for review.

The bill prays for specific execution of a contract made in the year 1888 and consummated in a grant of a right--of-way executed by plaintiff to defendants' predecessor in title in 1895 whereby in part consideration of the right-of--way

for defendants' railroad tracks over its land between its mill and Wheeling Creek, defendants' predecessor agreed to furnish railroad cars when needed by plaintiff at its mill for carrying away its cinders, ashes and the like and disposing thereof, all at defendants' expense. An injunction is also asked to prevent defendants from collecting from plaintiff. any charge for hauling away such wastage from the mill; and also that defendants be required to repay to plaintiff the sums of money which it has heretofore collected from plaintiff for such service over plaintiff's protest. If it be judicially determined that specific execution cannot be granted because of Federal or State law enacted subsequent to the making of the contract, then it is prayed that defendant be required to repay to plaintiff as the measure of its damages for non-performance the sums heretofore paid for such service; and that such sums as are hereafter paid for such service be declared to be a rent charge for the use of the right-of-way. Specific execution of the contract is asked; but if the contract cannot be specifically enforced, then the sums paid by plaintiff for the service and hereafter required to be paid, be declared to be the measure of the damages which plaintiff has sustained because of non-performance of the contract.

In 1888 plaintiff owned and operated a large iron mill located on its land abutting on Wheeling Creek. The predecessor in title of defendants secured by contract a railroad right-of-way over plaintiff's land between the mill and the creek. The tracks laid between the mill and the creek bank interfered with convenient disposal of the wastage from the mill which had theretofore been dumped over the bank. In part consideration of the right-of-way for its track defendants' predecessor contracted with plaintiff, afterwards consummated in the deed of 1895, that it would "at its own expense furnish cars when and as they may be needed by the grantor, in which said cinders, ashes and the like may be cast by grantor, and grantee shall then, at its own expense, dispose of same; provided the grantor shall have given thirty days' notice of its desire to avail itself of this clause, and shall have furnished, at its own expense, a suitable platform or chute on a spur track at grade, which track shall be constructed at its own expense, for the dumping of ashes into

cars, at a point on the property of grantor," to be mutually agreed upon. The contract was performed until after the enactment by congress in 1906 of the act to regulate commerce known as the "Hepburn Act." This act to regulate interstate commerce requires carriers to file with the commission and publish tariffs for transportation of persons and property, before performing service of that character; and prohibits the carrier from charging a greater, less or different compensation than that stated in the tariffs; all under penalty for violation. In 1908 defendant filed its tariffs for such service in which it made no charge against iron, steel and tin mills for hauling slag, flue dust, clean ashes and refuse moulding sand when unloaded and used by the railroad company; but charged a fixed rate per ton for hauling away ashes, brick bats, dirt, excavated material and the like. In 1911 defendants notified plaintiff that wastage from the mill covered by the tariffs filed would be hauled away upon payment of the charges fixed thereby, deeming it to be a violation of the Hepburn Act not to require payment of a fixed and uniform charge for the service. Thereafter the service was paid for by plaintiff under protest. In 1914 defendants finding no further use for the slag, flue dust, clean ashes and moulding sand, tendered and filed with the Interstate Commerce Commission tariffs by which they made a charge of twenty cents per net ton for hauling wastage from the mills.. The Commission, after hearing, found that these tariffs were not in compliance with the Act because they did not indicate that the refuse or wastage would be hauled to some convenient point on the line of railroad or on the line of a connecting carrier. 34 I. C. C. 337. Following that holding defendants, in 1915, filed new tariffs for the haulage of such wastage, in accordance with the finding of the Commission, which tariffs were accepted and now have the force of law.

Sections 5, 6 and 7 of the Public Service Commission Act of this State, passed in 1913 adapted to all public service corporations, are in substance and effect the same as Sections 12, 2 and 3 of the Interstate Commerce Act. Sections 6 and 7 of our Act, as do Sections 2 and 3 of the Federal Act with reference to railroads, declare the general policy of the State

as to rates and charges by public service corporations for services rendered. No greater or less compensation for any service shall be charged than is received from any other person, firm or corporation for a like and contemporaneous service under the same circumstances and conditions; and no undue or unreasonable advantage shall be given to any person or community over another person or community similarly situated in the rendering of any service. Since the passage of this Act defendants have had on file with the Public Service Commission of this State, tariffs with regard to the service of carrying wastage from mills, except from November 20, 1916 to February 14, 1918.

The bill is predicated on the theory that plaintiff's contractual rights are not affected by these tariffs, and, notwithstanding the Federal and State Acts (passed since the execution of the contract in 1895), it is entitled to a specific performance of the contract; or if it be held that specific execution cannot be enforced by reason of Federal or State law since enacted, then the sums of money heretofore collected for hauling the wastage and hereafter to be collected be fixed as the measure of plaintiff's damages for non-performance.

If the service of hauling from plaintiff's mill, the cinders, ashes and the like, which defendants' predecessor in title contracted to perform free of charge in part consideration of the right-of-way over the mill lands, is such service as falls within and is contemplated and regulated by the Federal and State Acts above named, then plaintiff cannot have specific performance, rescission, nor consequential damages which may result by reason of failure of performance on the part of the defendants. Equity will not give relief. Plaintiff's remedy, if any, is at law. *Railroad Co.* v. *Mottley,* 219 U. S. 467; *Dorr* v. *Ry. Co.,* 78 W. Va. 150; *Bell* v. *Traction Co.,* 83 W. Va. 640; and *Schrader* v. *Traction Co.,* 84 W. Va. 1. The principles upon which these and similar decisions are founded are so firmly established that they cannot now be questioned.

However, plaintiff's counsel, realizing that if the service is subject to tariffs of charges and falls within the Federal or State Acts, relief cannot be had in this proceeding, argues forcibly that the service called for in the contract is not interstate nor intrastate *transportation* and is not subject to tariffs

under either State or Federal law.  Obviously this is the controlling question before us.  Defendants argue forcibly that the courts cannot determine this question primarily; that it must be first determined by either the Interstate Commerce Commission or the Public Service Commission of this State whether the service is one for which uniform charges shall be made.

It is reasonably clear, irrespective of contractual obligations, that plaintiff at all times could have required defendants to haul away the wastage and refuse from its mill; for sec. 9 of Art. 11 of the State Constitution makes railroads public highways and free to all persons for transportation of their persons and property thereon, and directs the legislature to establish reasonable charges for the transportation of passengers and freight, and to prevent unjust discrimination in such service.  A railroad, a common carrier, must serve the public in hauling the commodities tendered to it and must provide facilities therefor.  This it must do in return for its charter and privileges.  *C. & O. Ry. Co.* v. *Pub. Ser. Com.*, 242 U. S. 603.  Moreover defendant has held itself out as ready to perform such service for all mills.  It, as well as other railroads which have filed these tariffs, has become a common carrier for that purpose.  Railroads as such are expressly within the Public Service Commission Act, chap. 15-O of the Code; and by sections 6 and 7 thereof, it is unlawful for any public service corporation, subject to its provisions, to charge any one a greater or less compensation for any service whatever than it charges others under like conditions and similarly situated; and no undue or unreasonable preference shall be given to one above another.  The Interstate Commerce Commission by requiring the interstate railroads to file appropriate tariffs for the transportation of slag and refuse from iron and steel mills, and by declaring that it is not incumbent upon the railroads to gratuitously perform this service, has already determined that such service falls within and is subject to the provisions of the Federal Act.  34 I. C. C. 337.  The Public Service Commission by receiving and filing these tariffs covering this service has tacitly held that it falls within the operation of our State law.  To hold that the parties by contract may take themselves without the control of these laws

would emasculate them. Equity will not enforce a contract the result of which will be a violation of a constitutional law, either state or federal.

Assuming that the tariffs complained of cover the service stipulated for in the contract, and by the very terms thereof they do so, we do not accede to the argument of plaintiff's counsel that the service is not governed by the State and Federal laws above referred to, and cannot be regulated by tariffs of charges filed under the Acts. In the case of *Texas & Pac. Ry. Co.* v. *American Tie & Lumber Co.*, 234 U. S. 138 relied upon by defendants, the question there at issue was whether the tariffs on lumber on file covered transportation on railroad ties tendered for transportation; and not whether the carrying of the ties was a subject of tariffs. The case before us is whether the removal of wastage from plaintiff's mill is a transportation service by a common carrier, the charges for which fall within the regulatory purposes of the laws; and we think that question has been in effect decided adversely to plaintiff by both Federal and State Commissions.

A court of equity has no jurisdiction to award the relief prayed for, based on the non-performance of the contract on the part of defendants. The action of the chancellor in sustaining the demurrers is affirmed.

*Ruling affirmed.*