[Civ. No. 9262. First Appellate District, Division Two.—December 10, 1934.]

G. GALLICK, Respondent, v. N. CASTIGLIONE et al., Appellants.

**J. E. McCurdy** for Appellants.

**Clifford D. Good** for Respondent.

DOOLING, J., *pro tem.*—This is an appeal from a judgment against defendants for the price of certain merchandise sold and delivered to them. The materials were sold prior to the repeal of the eighteenth amendment to the United States Constitution and appellants defended the action on the theory that the contract of sale was illegal. Specifically defendants alleged in their answer that said materials were sold "for the express purpose of manufacturing intoxicating liquor"; that the seller knew that they were to be used for that purpose "and actively cooperated with defendants herein in properly utilizing said goods, wares and merchandise for said purpose"; and that the seller "directed said defendants in the proper manner in which to use said goods, wares and merchandise for the purpose of distilling intoxicating liquor therefrom". The court found against this defense and appellants claim that this finding is not supported by the evidence.

The general rule applicable to such cases is thus stated in *California Raisin Growers' Assn.* v. *Abbott,* 160 Cal. 601, 609 [117 Pac. 767], quoting from *Tracy* v. *Talmage,* 14 N. Y. 176 [67 Am. Dec. 132]:

" 'I consider it, therefore, as entirely settled by the authorities to which I have referred, that it is no defense to an action brought to recover the price of goods sold, that the vendor knew that they were bought for an illegal purpose, provided it is not made a part of the contract that they shall be used for that purpose; and, provided, also,

that the vendor has done nothing in aid or furtherance of the unlawful design.' ''

We may take it as proved in this case that the seller knew that appellants were buying the goods for the purpose of manufacturing intoxicating liquor. It seems equally clear that it was not made a part of the contract that they should be used for that purpose. The contract was a contract of outright sale and what appellants did with the goods was no concern of the seller, nor did appellants undertake by their contract to bind themselves to manufacture intoxicating liquor with them. The only question on this phase of the case is whether the evidence was such as to compel a finding that the seller did something in aid or furtherance of the unlawful design. If the evidence is open to two inferences, one of which will support the finding of the trial court, this court is foreclosed by the finding, even though from the same evidence we might have drawn the other inference had we been the triers of fact.

█ The only evidence relied on by appellants in support of their claim that the court's finding is unsupported in this particular was given by one of the appellants. This appellant testified that at his first interview with the seller: ''I asked him if I could get credit for a certain amount of sugar—told him I would pay him as soon as the product came out. Q. What product? A. Whiskey. He said: 'All right.' ''

It is claimed that this extension of credit was in aid or furtherance of the illegal purpose. We cannot hold that the trial court erred in finding that it was not. The seller did no more than to agree to sell to appellants on credit with knowledge of their illegal purpose. To hold that this would bar the seller's recovery would destroy the rule above quoted.

█ Appellant further testified: ''Sometime we would go in and talk things over; he would ask me how I was getting along, ask me what kind of results I was getting out of the product; I would tell him and he would say, 'So and so are doing better than you are getting out of it,—get more gallons of whiskey out of a sack of sugar',—give me tip how to work it better. . . . He would tell me how the other boys were doing it.''

We may concede that this evidence would have been sufficient to support a finding that the seller acted in aid or furtherance of the illegal purpose. The question is, however, did it compel such a finding? Passing by the credibility of the witness, and giving it full weight, we cannot hold that it did. It was open to the inference, which we must assume the trial court drew from it, that it was mere passing conversation not acted upon by appellants. Appellant did not testify that he followed any of these tips or was aided in any way by them. Unless the trial court found that the seller advised the buyer how to use the materials in the manufacture of intoxicating liquor and that the buyer followed and was aided by such advice it cannot be said that the seller did anything ''in aid or furtherance'' of the illegal purpose.

Appellants, however, claim further that the contract was in violation of the following section of the National Prohibition Act:

''It shall be unlawful to advertise, manufacture, sell or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction or recipe advertised, designed or intended for use in the unlawful manufacture of intoxicating liquor. (Act October 28, 1919, c. 85, tit. II, sec. 18, 41 Stat. 313.)''

The effect of this section upon sales where the buyer knew that the seller intended to use the materials sold in the manufacture of liquor has been directly passed upon in *Perko* v. *Rock Springs Commercial Co.,* 37 Wyo. 98 [259 Pac. 520], and *Jacobs* v. *Danciger,* 328 Mo. 458 [41 S. W. (2d) 389, 77 A. L. R. 1237]. In both cases the courts held that the mere knowledge of the seller that the buyer intended to manufacture intoxicants did not bring the case within the above-quoted section of the United States statutes, both cases holding that in addition to knowledge the design or intent of the seller that the materials should be so used must be established, it not being sufficient to establish the design or intent of the buyer.

In this connection the Supreme Court of Missouri said in *Jacobs* v. *Danciger, supra:*

''It is not expressly provided in the statute that mere knowledge by the seller of the intended use of the substance by the purchaser is a violation of the law. It seems, if the

Congress had so intended, it would have provided that it shall be unlawful to knowingly sell any substance intended by the purchaser for such use. It did not do so, but fixed the intention of the seller in making the sale as the test of legality. For this reason we think the word 'intended' was not used in the sense of mere knowledge.''

The case of *Three Star Food Products Corp.* v. *Ofsa*, 94 W. Va. 636 [119 S. E. 859, 29 A. L. R. 1053], relied on by appellants, is not inconsistent with the two last-cited cases. It went no further than to hold that where there was evidence from which a jury might find that the article sold was designed or intended for use in the manufacture of intoxicants, the trial court erred in taking that issue from the jury. In *Scheeline* v. *Pezzola*, 29 Cal. App. 266 [155 Pac. 127], also relied upon by appellants, the evidence showed that the seller actively conspired with one of the buyers to violate the law.

While the seller's conduct in this transaction may not have been commendable, his legal rights are in no way affected by that consideration, and we find no error in the findings or judgment.

Judgment affirmed.

Nourse, P. J., and Sturtevant, J., concurred.